*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 51**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

JOHN R. LATHAM,
*Appellant,*

*v.*

OFFICE OF RECOVERY SERVICES,
*Appellee*.

No. 20170556
Filed August 22, 2019

On Direct Appeal

Third District, Salt Lake
The Honorable Richard D. McKelvie
No. 160904935

Attorneys:

Paul R. Smith, Jeffrey D. Gooch, C. Michael Judd, Salt Lake City,
for appellant

Sean D. Reyes, Att'y Gen., Brent A. Burnett, Asst. Solic. Gen.,
Tony S. LeBlanc, Asst. Att'y Gen., Salt Lake City,
for appellee

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

### INTRODUCTION

¶1    John R. Latham suffered a stroke and his injuries were exacerbated by a hospital's failure to properly diagnose it. Latham sought compensation from the hospital for past and future medical expenses as well as other damages. He ultimately settled his claim for an amount much less than what he believed it was worth.

¶2 At the time of his injury, Latham was receiving Medicaid, which paid for his treatment. When a third party is legally liable for medical expenses paid by Medicaid—like the hospital here—federal law requires that state Medicaid plans seek reimbursement from the third-party tortfeasor.

¶3 The parties dispute how much of Latham's settlement award the Office of Recovery Services (ORS)[1] is permitted to collect. Latham argues ORS may place a lien on only the part of his award allocable to past medical expenses. And according to Latham's calculations, the State's expenditures far exceed that portion of his award. He argues that if the State is fully reimbursed, it would violate a federal Medicaid statute that prohibits states from imposing a lien on recipient's property because ORS would be taking settlement proceeds intended to compensate him for damages other than past medical expenses.

¶4 The district court disagreed with this argument and ruled against Latham on a motion for judgment on the pleadings. The court held that ORS was entitled to recover from the portion of Latham's settlement award representing all medical expenses, both past and future.

¶5 Latham appeals. The question before us is whether ORS may place a lien on and collect from the portion of Latham's tort recovery allocable to all medical expenses, both past and future, or only past medical expenses. Based on the language of the relevant federal statutes and United States Supreme Court precedent, we conclude that ORS may recover from only that portion of an award representing past medical expenses. Accordingly, we reverse and remand.

## BACKGROUND

¶6 Latham suffered a stroke in early 2014. When he began to experience symptoms, he went to the hospital. Without conducting a

---

[1] ORS is the Utah Department of Human Services agency tasked with, among other things, "[c]ollection of medical reimbursement from responsible third parties to both reimburse and avoid state Medicaid costs." Recovery Services, *ORS Mission Statement*, UTAH DEP'T OF HUMAN SERVS., http://ors.utah.gov/ors_mission.htm (last visited Aug. 13, 2019). ORS is charged with enforcing statutory claims pursuant to Utah Code section 26-19-401.

neurological exam, doctors there examined Latham, provided him with some pain and anti-nausea medication, and then discharged him.

¶7 Throughout the day, Latham's condition worsened. In the evening, he went by ambulance to a different hospital. There, doctors performed a brain scan, which revealed that he had suffered a stroke.

¶8 Latham brought malpractice and negligence claims against the first hospital. He alleged that the hospital's failure to diagnose his stroke caused severe and permanent injuries.

¶9 At the time of his injuries, Latham received Medicaid through the State of Utah. The parties agree that Medicaid paid a total of $104,065.32 in medical expenses related to Latham's stroke.

¶10 Generally, Medicaid does not seek reimbursement from Medicaid recipients when it pays for their medical treatment. But if a third party is liable for any or all of a recipient's injuries, then federal law requires state Medicaid programs to seek reimbursement from those third-party tortfeasors. *See* 42 U.S.C. § 1396a(a)(25)(A)–(B); UTAH CODE § 26-19-401.[2] And it requires recipients to assign to the State any proceeds they receive from the third party. *See* 42 U.S.C. § 1396k(a)(1)(A).

¶11 To that end, ORS entered into a collection agreement with Latham that permitted Latham to "include medical costs paid by the State of Utah when making a claim against" the hospital and allowed ORS to recover from funds Latham was able to recover from the hospital. The collection agreement provided that "ORS' recovery shall be the statutory claim, as reduced by the attorney's fee of 33.3% of ORS' recovery." Both parties agree that ORS' potential recovery of $104,065.32 must be reduced by at least $34,688.44 in attorney fees. Thus, the most ORS could recover from the settlement is $69,376.88.

¶12 Latham ultimately settled his claim for $800,000—an amount not nearly what he believed his claim was worth. ORS participated in the settlement negotiations and approved the agreement. Latham and ORS agree that the full value of Latham's

---

[2] During the course of this litigation, Utah Code section 26-19-5 was renumbered as section 26-19-401. Because the renumbering did not materially affect the text of the statute, we cite to the current version for the readers' convenience.

claim was \$7,257,972.52. This amount includes, among other damages, \$104,065.32 in past medical expenses paid by Medicaid and \$6,430,614 in future medical expenses that Medicaid is not currently obligated to pay.

¶13 Latham filed a complaint for declaratory relief in the district court, seeking a determination of how much ORS was entitled to collect from his settlement award. Citing federal Medicaid law, Latham argued that ORS was permitted to place a lien on only that portion of the settlement amount attributable to past medical expenses. He argued that the district court should divide the settlement amount (\$800,000) by the total value of the claim (\$7,257,972.52) and then multiple the resulting ratio (11 percent) by the total past medical expenses (\$104,065.32). According to Latham's calculations, that meant ORS' recovery was capped at \$7,631.46 after attorney fees.

¶14 ORS countered that it was entitled to collect from the portion of the award representing all medical expenses—be it for past or future expenses. Under ORS' calculation, this meant it could collect from up to 90 percent of the settlement amount (or \$720,000), permitting a full recovery for ORS.

¶15 Latham filed a motion for judgment on the pleadings, which the district court denied. Instead, the court entered judgment in favor of ORS, ruling that ORS could place a lien on the portion of Latham's settlement amount representing all medical expenses. And because \$720,000 was greater than the State's lien amount, the State could recoup its entire claim of \$69,376.88 (\$104,065.32 minus attorney fees of \$34,688.44).

¶16 Latham appeals. We exercise jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶17 This court reviews a decision on a motion for judgment on the pleadings de novo, giving no deference to the district court's analysis. *See DIRECTV v. Utah State Tax Comm'n*, 2015 UT 93, ¶ 11, 364 P.3d 1036.

## ANALYSIS

¶18 The parties dispute how much ORS is entitled to collect from Latham's settlement award. The answer lies in whether federal Medicaid law permits ORS to attach its lien to settlement funds

allocable to all medical expenses—both past and future—or to only the portion of the settlement representing past medical expenses.

¶19   We first analyze applicable federal law and conclude that ORS may place its lien only on settlement funds allocable to past medical expenses. We then address how a district court should make such a calculation.

## I. APPLICABLE FEDERAL LAW

¶20   Medicaid is a federal-state program that provides medical assistance to residents of participating states who cannot afford medical care. *See* 42 U.S.C. § 1396a(a). In a state's implementation of its Medicaid plan, federal law broadly prohibits states from seeking reimbursement from individual Medicaid recipients for benefits they have received (except in some circumstances not relevant here). Specifically, the law prohibits a state from imposing a lien "against property of an individual on account of medical assistance rendered to him [or her] under a State plan" before his or her death. *Id.* § 1396p(a) (anti-lien provision).

¶21   But the third-party liability provisions of the federal Medicaid law create an exception to this general rule. If a third party is liable for medical costs paid by Medicaid on behalf of a recipient, federal law requires states to first "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan." *Id.* § 1396a(a)(25)(A). If the State determines such legal liability exists and Medicaid has paid for medical costs for which the third party is liable, then the state plan must "seek reimbursement for such assistance to the extent of such legal liability." *Id.* § 1396a(a)(25)(B). Finally, federal law requires participating states to have in place laws under which the state plan is considered to have acquired the right of the recipient to payment by the third party, to the extent that Medicaid payments have been made. *Id.* § 1396a(a)(25)(H).

¶22   The third-party liability provisions may be in tension with the anti-lien provision when a Medicaid recipient receives a tort recovery that is insufficient to both cover Medicaid's expenditures and fully compensate the recipient for his or her other damages. The United States Supreme Court provided some clarification on the interaction of these provisions in *Arkansas Department of Health & Human Services v. Ahlborn*, 547 U.S. 268 (2006).

¶23   In that case, Arkansas resident Heidi Ahlborn suffered injuries in a car accident and the Arkansas Department of Health and Human Services (ADHS) paid medical providers $215,645.30 on

her behalf under the state's Medicaid plan. *Id.* at 272–75. Although the parties agreed that Ahlborn's total claim was reasonably valued at $3,040,708.12, the settlement she received from the tortfeasor was only $550,000. *Id.* at 274. At the time, "Arkansas law automatically impose[d] a lien on the settlement in an amount equal to Medicaid's costs." *Id.* at 272. Pursuant to that law, ADHS asserted a lien on Ahlborn's settlement for the full amount of its expenditures related to her injury. *Id.* at 274.

¶24   Ahlborn filed an action seeking a declaration that ADHS' lien violated the anti-lien provision because the lien's satisfaction would "require depletion of compensation for injuries other than past medical expenses." *Id.* She argued that federal law permitted ADHS to place a lien on only the portion of the settlement allocable to past medical expenses. The parties stipulated that "if Ahlborn's construction of federal law was correct, ADHS would be entitled to only the portion of the settlement ($35,581.47) that constituted reimbursement for medical payments made." *Id.* This was far less than the $215,645.30 necessary to fully reimburse ADHS.

¶25   The district court sided with ADHS, ruling that Ahlborn had assigned ADHS her right to any recovery from the third-party tortfeasors to the full extent of Medicaid's payments on her behalf. *Id.* But the Eighth Circuit reversed, holding that ADHS was entitled to only that portion of the judgment that represented payments for medical care. *Id.* at 275.

¶26   The Supreme Court affirmed the Eighth Circuit, construing United States Code section 1396a to allow ADHS to collect from only that portion of Ahlborn's settlement that represented medical expenses. *Id.* at 282 ("[T]he federal third-party liability provisions *require* an assignment of no more than the right to recover that portion of a settlement that represents payments for medical care."). The court concluded that "[f]ederal Medicaid law does not authorize ADHS to assert a lien on Ahlborn's settlement in an amount exceeding $35,581.47, and the anti-lien provision affirmatively prohibits it from doing so." *Id.* at 292.

¶27   Here, the district court interpreted *Ahlborn* to allow ORS to recover from any of Latham's settlement award representing compensation for medical expenses in general—be it for past or future costs. The district court reasoned that throughout the *Ahlborn* opinion, the Supreme Court referred to the state's recoverable interest as that portion representing "medical expenses" without further limiting the state's interest to past medical expenses.

¶28 It is correct that the *Ahlborn* Court did not expressly differentiate between past and future medical expenses in its holding. This has resulted in litigation of the question presented here in lower courts throughout the nation. There has been some variance in courts' conclusions, but the majority of courts have held that states may collect from only the portion of a recipient's settlement award representing past medical expenses.[3]

¶29 We conclude that federal law supports the majority position that the State may place a lien on and collect from only that portion of a tort recovery fairly allocable to past medical expenses. As the Supreme Court made clear in *Ahlborn*, the general rule is that a state cannot seek reimbursement from a recipient for medical expenses Medicaid has paid on the recipient's behalf. The third-party liability provisions carve out an exception to this rule. So, a state's authority

---

[3] *See, e.g., McKinney ex rel. Gage v. Phila. Hous. Auth.*, No. 07–4432, 2010 WL 3364400, at *9 (E.D. Pa. Aug. 24, 2010) (concluding that *Ahlborn* does not permit states to encumber settlement money attributable to future medical expenses to reimburse itself for past medical expenditures); *Price v. Wolford*, No. CIV–07–1076–M, 2008 WL 4722977, at *2 (W.D. Okla. Oct. 23, 2008) (same); *Giraldo v. Agency for Health Care Admin.*, 248 So. 3d 53, 56 (Fla. 2018) (interpreting the plain language of the Medicaid Act to allow the state to place a lien on only those settlement funds allocable to past medical expenses); *Lugo ex rel. Lugo v. Beth Israel Med. Ctr.*, 819 N.Y.S.2d 892, 895–96 (Sup. Ct. 2006) (same); *In re E.B.*, 729 S.E.2d 270, 288 (W. Va. 2012) ("After a thorough examination of the *Ahlborn* decision and the language contained in [the West Virginia statute], . . . we find that [the statute] directly conflicts with *Ahlborn*, insofar as it permits [the state] to assert a claim to more than the portion of a recipient's settlement that represents past medical expenses."); *but see I.P. ex rel. Cardenas v. Henneberry*, 795 F. Supp. 2d 1189, 1197 (D. Colo. 2011) (concluding that the state agency "may seek reimbursement for its past medical expenses from funds allocated to 'medical expenses,' regardless of whether those funds are allocated for past or future medical expenses"); *In re Matey*, 213 P.3d 389, 394 (Idaho 2009) ("The [*Ahlborn*] [C]ourt made no distinction between damages for past medical care and those for future medical care. Nothing in 42 U.S.C. § 1396p indicates that the [s]tate may not seek recovery of its payments from a Medicaid recipient's total award of damages for medical care whether for past, present, or future care.").

to place a lien on a recipient's tort recovery is restricted by what the third-party liability provisions authorize.

¶30   The Supreme Court explained the following:

> There is no question that the State can require an assignment of the right . . . to receive payments for medical care. So much is expressly provided for by §§ 1396a(a)(25) and 1396k(a). And we assume . . . that the State can also demand as a condition of Medicaid eligibility that the recipient "assign" in advance any payments that may constitute reimbursement for medical costs. To the extent that the forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. But that does not mean that the State can force an assignment of, or place a lien on, any other portion of Ahlborn's property. As explained above, the exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies.

*Ahlborn*, 547 U.S. at 284–85 (citation omitted).

¶31   And the third-party liability provisions authorize the State to seek reimbursement only for payments it has already made: in other words, past medical expenses. United States Code section 1396a(a)(25)(B) states that "in any case where such a legal liability is found to exist *after medical assistance has been made available* on behalf of the individual . . . [,] the State . . . will seek reimbursement *for such assistance* to the extent of such legal liability."[4] (Emphases added.)   This language speaks to what

---

[4] With regard to this provision, the Supreme Court rejected ADHS' argument that "*to the extent of such legal liability*" meant the entirety of a recipient's settlement was "fair game." *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 280 (2006). The Supreme Court explained this language referred to "the legal liability of third parties . . . *to pay for care and services available under the plan.*" *Id.* (alteration in original) (quoting 42 U.S.C. § 1396a(a)(25)(A)). "[In *Ahlborn*], the tortfeasor has accepted liability for only one-sixth of the recipient's overall damages, and ADHS has stipulated that only $35,581.47 of that sum represents compensation

(continued)

expenses a state can recover. And it makes clear that a state is entitled to recover only those expenses it has already paid—i.e., past medical expenses. But section 1396a(a)(25)(B) does not directly speak to the question presented here—whether a state's lien may extend to the portion of a settlement award that is for future medical expenses. But section 1396a(a)(25)(H) does.

¶32   Section 1396a(a)(25)(H) states that when a state acquires a recipient's right to payment from a third party, that state acquires only the right to reimbursement for payments that it has already made:

> [T]o the extent that *payment has been made* under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, *to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual*, the State is considered to have acquired the rights of such individual to payment by any other party *for such health care items or services . . . .*

(Emphases added.) The phrase "'[s]uch health care items or services' is most naturally and reasonably read as referring to those 'health care items or services' already 'furnished' and for which 'payment has been made under the state plan.'" *Giraldo v. Agency for Health Care Admin.*, 248 So. 3d 53, 56 (Fla. 2018) (citation omitted). These are past medical expenses. This section, however, could simply be establishing a floor for recovery rather than constructing a ceiling. After all, section 1396a(a)(25)(H) speaks in terms of what a state must do, not in terms of what a state is limited to doing. It mandates that a state "ha[ve] in effect laws under which . . . the State is considered to have acquired the rights of [an] individual to payment by any other party for" past medical expenses. It does not affirmatively foreclose a state from having in effect laws under which that state is entitled to acquire the rights of an individual to payment by any other party for other costs such as future medical expenses, pain and suffering, and lost wages.

---

for medical expenses. Under the circumstances, the relevant 'liability' extends no further than that amount." *Id.* at 280–81.

¶33 The *Ahlborn* decision helps resolve this issue. There, the Supreme Court interpreted section 1396a(a)(25)(H) as limiting the scope of an assignment of rights. The Court stated in clear terms that "the statute does not sanction an assignment of rights to payment for *anything other than medical expenses*—not lost wages, not pain and suffering, not an inheritance." *Ahlborn*, 547 U.S. at 281 (emphasis added). Reading this language from *Ahlborn* in conjunction with the language of section 1396a(a)(25)(H), we conclude that section establishes a ceiling on the portions of a settlement to which a lien may extend. And that ceiling limits the lien to the portion of a settlement representing past medical expenses.

¶34 We note that this conclusion seems to conflict with the language of section 1396k. That section appears to authorize states to acquire the rights to other portions of the settlement, not just the past medical expenses portion of the settlement. Section 1396k(a)(1)(A) requires an individual receiving Medicaid to "assign the State any rights . . . to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party." This provision makes no distinction between past and future payments for medical care. Section 1396k(b) further states:

> Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed . . . , and the remainder of such amount collected shall be paid to such individual.

This provision first makes clear that a state's right to reimbursement is only for past medical expenses. This point is undisputed. But section 1396k(b) then suggests that an assignment of an individual's right to payment may extend to more than that portion of the settlement representing past medical expenses. Section 1396k(b) contemplates situations where a "remainder" of the amount collected under an assignment or lien will be paid to the individual who received medical assistance. Yet if a state's assignment of rights was limited to the portion of the settlement allocated for past medical expenses, such a situation would never occur. There would never be a "remainder" to pay the individual because the state would collect the entire amount available under the assignment—an amount presumptively equivalent to past medical expenses, which

the state is entitled to recover. A remainder would exist only if the state could draw from the entire portion of the settlement allocated to "support" or "payment for medical care."

¶35 There is, however, a way to resolve this apparent inconsistency in the statutory scheme. Section 1396a(a)(25)(H) speaks more specifically to the issue presented here. And where there is an inconsistency between related statutory provisions, the specific provision controls over the general. *See Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 882 P.2d 1143, 1146 (Utah 1994). Section 1396k(b) speaks about the assignment of rights generally. And the conclusion we derive from that section requires some inductive reasoning based on the "remainder" language. The language of section 1396a(a)(25)(H), meanwhile, speaks directly to the issue presented here. And when "there is a conflict between a general provision and specific provision, the specific provision prevails." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 183 (2012). We accordingly conclude that the State may place a lien on and recover from only that portion of an individual's settlement representing past medical expenses.

¶36 We understand that ORS seeks reimbursement for only past payments made on Latham's behalf. ORS is not attempting to collect future medical expenses that Medicaid may or may not pay on behalf of Latham. But, under the Supreme Court's logic in *Ahlborn*, this is precisely why ORS may not place a lien on any of Latham's settlement allocable to future medical expenses. The Court made clear that the state may require an assignment of, or place a lien on, only settlement funds representing what the state is authorized to collect. *Ahlborn*, 547 U.S. at 284. As the Supreme Court explained, "Again, the statute does not sanction an assignment of rights to payment for anything other than medical expenses—not lost wages, not pain and suffering, not an inheritance." *Id.* at 281. While the Court did not include "future medical expenses" in that list, it would have fit. As we have established, a state is authorized to collect only payments it has already made—past medical costs. And while the *Ahlborn* Court did not expressly differentiate between past and future medical expenses, it appears that the Court may have considered future medical expenses to be distinct from past medical expenses—with future medical expenses treated like other compensation belonging to the recipient. *Id.* at 273 ("[Ahlborn] claimed damages not only for past medical costs, but also for permanent physical injury; *future medical expenses*; past and future pain, suffering, and mental anguish; past loss of earnings and

working time; and permanent impairment of the ability to earn in the future." (emphasis added)). And the Court was clear that state Medicaid plans cannot collect from the portion of a settlement representing those categories of damages, as they represent property of the recipient protected by the anti-lien provision and outside the reach of the third-party liability provisions. *Id.* at 284–85.

¶37    Accordingly, we reverse the district court and conclude that ORS cannot collect from Latham's settlement award beyond the portion that can be fairly apportioned to past medical expenses. As discussed below, we leave this apportionment to the district court on remand.

## II. REIMBURSEMENT CALCULATION

¶38    Here, the parties to the settlement agreement assented to a final lump sum, but they did not itemize or quantify the various damages that amount was intended to cover. This is not unusual. And it raises a question numerous courts have confronted since *Ahlborn*: how should a court determine what portion of a tort recovery represents compensation for past medical expenses in the absence of an explicit designation by the parties or the factfinder?

¶39    Latham argues that the Supreme Court answered this question in *Ahlborn* by endorsing the following formula: divide the settlement amount by the total value of the Medicaid recipient's claim against the third-party tortfeasor then multiply the resulting ratio by the amount Medicaid has paid on the recipient's behalf. Latham argues the district court erred when it did not apply this formula.

¶40    Latham is incorrect. The *Ahlborn* Court did not endorse any such formula. It did not have to. The parties in that case stipulated to all relevant numbers, so the question we face here was not before the Court. *See id.* at 274. While the *Ahlborn* parties apparently agreed that this ratio accurately reflected the amount of the recovery representing compensation for past medical expenses in that case, the Court's acceptance of those stipulated facts did not amount to an endorsement of the parties' method for arriving at those figures.

¶41    Despite lacking occasion to address this issue, the *Ahlborn* Court nonetheless anticipated the likelihood that a tort recovery might not include an itemized allocation of compensation. *See id.* at 288. The Court noted that these problems could "be avoided either by obtaining the State's advance agreement to an allocation or, if

necessary, by submitting the matter to a court for decision." *Id.* But beyond this statement, the Court did not provide specific guidance.

¶42   The Supreme Court provided a bit more direction in *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 638 (2013). *Wos* involved a North Carolina statute requiring that up to one-third of any damages recovered by a Medicaid recipient be paid to the state to reimburse it for injury-related payments. *Id.* at 630. The Court rejected this approach, holding that it violated the anti-lien provision because it allowed the state to claim a portion of a recipient's award that was not attributable to medical expenses. *Id.* at 636. The Court criticized,

> The defect in [the statute] is that it sets forth no process for determining what portion of a beneficiary's tort recovery is attributable to medical expenses. Instead, North Carolina has picked an arbitrary number— one-third—and by statutory command labeled that portion of a beneficiary's tort recovery as representing payment for medical care.

*Id.*

¶43   *Wos* makes clear that if parties do not stipulate to the portion of an award attributable to past medical expenses, a court must make a case-specific factual finding. Arbitrary presumptions will not do. Beyond that, the Court did not mandate any particular method of accomplishing this task.

¶44   Ultimately, ORS may place a lien on only that portion of a settlement or judgment that is fairly allocable to past medical expenses. When this fact-intensive issue is presented to a district court, we will not mandate that the court use any particular method to make this determination. We leave it to the discretion of the district court to determine the appropriate methodology, based on the information at the court's disposal. The court might decide that an evidentiary hearing is necessary, that the ratio formula is a fair allocation in the case at hand, or that the court is sufficiently familiar with the facts of the case to make a determination based solely on oral argument. *See, e.g., McKinney ex rel. Gage v. Phila. Hous. Auth.*, No. 07–4432, 2010 WL 3364400, at *9 (E.D. Pa. Aug. 24, 2010) ("Having presided over this hotly contested case for nearly three years, this [c]ourt is in the best position to assess the factors that would have influenced the [p]arties' settlement positions and to make an ultimate determination of what portion of the settlement represents compensation for past medical expenses.").

¶45   Here, the district court found the following undisputed facts: Latham settled his claim against the hospital for $800,000. The total value of his claim was $7,257,972.52. This amount includes, among other damages, $104,065.32 in past medical expenses and $6,430,614 in future medical expenses.

¶46   To determine the portion of Latham's settlement from which ORS could collect, the district court's methodology resembled the ratio formula used by the *Ahlborn* parties. The court determined what portion of Latham's total claim value resulted from all medical expenses—both past and future. Then, the court "appl[ied] that percentage to the settlement to determine what amount of the settlement represent[ed] compensation for medical expenses." Because 90 percent (or $6,534,679.32) of Latham's total claim (of $7,257,972.52) represented medical expenses, the district court reasoned that approximately 90 percent (or $720,000) of Latham's $800,000 settlement was allocable to medical expenses. Because the court had ruled that ORS could recover its claim ($69,376.88) from the portion of the settlement representing all medical expenses ($720,000), the court allowed ORS to be fully reimbursed.

¶47   The district court is free to use a ratio methodology if the court concludes that it results in a fair allocation under the case at hand. However, it was error to allow ORS to collect from the portion of the tort recovery representing future medical expenses.

¶48   Accordingly, we reverse the district court and remand for a determination of the portion of Latham's settlement that is fairly allocable to past medical expenses.

## CONCLUSION

¶49   We reverse the district court's conclusion that the State can recover from settlement proceeds representing both past and future medical costs. ORS may place a lien on and recover from only that portion of Latham's settlement representing past medical expenses. Accordingly, we reverse and remand to the district court to proceed in accordance with this decision.