[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13693

_____

D.C. Docket No. 4:16-cv-00116-MW-CAS

GIANINNA GALLARDO,
an incapacitated person,
by and through her parents and co-guardians
Pilar Vassallo and Walter Gallardo,

Plaintiff - Appellee,

versus

ELIZABETH DUDEK,
in her official capacity as Secretary of the
Florida Agency for Health Care Administration,

Defendant,

MARY MAYHEW,
in her official capacity as Secretary of the
Florida Agency for Health Care Administration,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 26, 2020)

Before WILSON, BRANCH, and ANDERSON, Circuit Judges.

BRANCH, Circuit Judge:

This appeal requires us to decide the enforceability of Florida's statutory scheme through which it obtains reimbursement from third parties for Medicaid expenses it has paid to injured persons.  Specifically at issue in this appeal is whether the Florida Agency for Health Care Administration ("FAHCA"),[1] when it has not consented to the settlement agreement in a personal injury lawsuit between the injured person and a third party, is limited to recovering the expenses it has paid only from amounts of a third-party recovery representing compensation for past medical expenses or whether it can also recover from those amounts that may be compensation for future medical expenses.[2]  That determination turns on whether federal Medicaid law preempts the way Florida pursues reimbursement from Medicaid recipients' personal injury settlements.

The plaintiff in this suit sought declaratory and injunctive relief to prevent FAHCA from recovering beyond that portion of her settlement specifically designated by the settling parties as compensation for her past medical expenses. The district court granted summary judgment for the plaintiff, concluding that federal law preempts Florida's statutory scheme for recovering Medicaid expenses.

---

[1] The Florida Agency for Health Care Administration is the state agency responsible for the administration of Medicaid in Florida.

[2] It is also worth noting what this appeal is *not* about – it is not about whether FAHCA can recover for medical expenses it has not yet paid to Appellee but may have to pay in the future.

We conclude that federal law does not preempt these Florida policies, and we reverse the contrary decision of the district court.

## I.    BACKGROUND

Gianinna Gallardo was grievously injured in 2008 when she was hit by a pickup truck after getting off her school bus.  She remains in a persistent vegetative state. Florida's Medicaid program[3] paid $862,688.77 for her medical care.  Her parents filed suit in state court on her behalf against the truck's owner, the truck's driver, and the school district.  In 2015, the parties negotiated, and the state court approved, settlement of that suit for a total of $800,000, which Gallardo's parents view as covering only a small fraction of the total damages she suffered and the future costs she will face for her care.[4]  The settlement included an explicit allocation of $35,367.52 for past medical expenses.[5]  It further stated that although some of the balance may represent compensation for future medical expenses

---

[3] The Medicaid program allows states voluntarily to obtain funding from the federal government to provide health care benefits for needy persons.  In return, the states must comply with federal laws and regulations in administering their Medicaid programs.  *See generally Harris v. McRae*, 448 U.S. 297, 301 (1980).

[4] Given the lifetime of care Gallardo is likely to require, her parents estimate the true value of her case at $20 million.

[5] As explained by Gallardo in her complaint: "This allocation was based on the calculation of the ratio the settlements bore to the total monetary value of all [Gallardo's] damages. Using the conservative valuation of all [Gallardo's] damages of $20,000,000, it was calculated that [Gallardo] was receiving **4%** of the total monetary value of all her damages in the settlements, and accordingly she was receiving in the settlements **4%** of her $884,188.07 claim for past medical expenses, or $35,367.52."

3

Gallardo will incur in the future, no portion of the settlement is reimbursement for future medical expenses because Gallardo or others on her behalf have not yet paid any.[6]  Importantly, FAHCA did not participate in or agree to the terms of the settlement.

When Medicaid recipients receive a personal injury judgment or settlement compensating them for medical expenses, federal law requires that the Medicaid program be reimbursed out of those funds.  *See* 42 U.S.C. §§ 1396a(a)(25)(H), 1396k.  Florida law acknowledges the requirement to seek reimbursement for medical payments it has made in its Medicaid Third-Party Liability Act:

> It is the intent of the Legislature that Medicaid be the payor of last resort for medically necessary goods and services furnished to Medicaid recipients. All other sources of payment for medical care are primary to medical assistance provided by Medicaid. If benefits of a liable third party are discovered or become available after medical assistance has been provided by Medicaid, it is the intent of the Legislature that Medicaid be repaid in full and prior to any other person, program, or entity. Medicaid is to be repaid in full from, and to the extent of, any third-party benefits, regardless of whether a recipient is made whole or other creditors paid. . . . It is intended that if the resources of a liable third party become available at any time, the public treasury should not bear the burden of medical assistance to the extent of such resources.

---

[6] As further stated by Gallardo in her complaint: "[T]he [settling] parties acknowledge that [Gallardo] may need future medical care related to her injuries, and some portion of this settlement may represent compensation for future medical expenses [Gallardo] will incur in the future. However, the parties acknowledge that [Gallardo], or others on her behalf, have not made payments in the past or in advance for [Gallardo's] future medical care and [Gallardo] has not made a claim for reimbursement, repayment, restitution, indemnification, or to be made whole for payments made in the past or in advance for future medical care. Accordingly, no portion of this settlement represents reimbursement for future medical expenses."

4

Fla. Stat. § 409.910(1).  The Act instructs FAHCA to "seek reimbursement from third-party benefits to the limit of legal liability and for the full amount of third-party benefits, *but not in excess of the amount of medical assistance paid by Medicaid.*"  *Id.* § 409.910(4) (emphasis added).

Florida carries out this policy by granting FAHCA "an automatic lien for the full amount of medical assistance provided by Medicaid to or on behalf of the recipient for medical care furnished as a result of any covered injury or illness for which a third party is or may be liable."  *Id.* § 409.910(6)(c).  In the event the recipient of the Medicaid funds brings a tort action against a third party that results in a settlement, FAHCA is automatically entitled to half of the recovery (after 25 percent attorney's fees and costs), up to the total amount provided in medical assistance by Medicaid.  *Id.* § 409.910(11)(f).

Crucially, and as will be seen below, in line with the Supreme Court in *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627 (2013), Florida law allows the Medicaid recipient to challenge this automatic allocation.  A Florida Medicaid recipient who receives a personal injury settlement or judgment may challenge the amount FAHCA is claiming under that formula in the following way.  Within 60 days of receiving the settlement proceeds, the Medicaid recipient must place the full amount of FAHCA's entitlement in an interest-bearing trust account.  *Id.* § 409.910(17)(a).  Then, within 21 days the recipient must file a petition with the

5

state Division of Administrative Hearings. *Id.* § 409.910(17)(b). In that administrative proceeding, "the recipient must prove, by clear and convincing evidence, that the portion of the total recovery which should be allocated as past and future medical expenses is less than the amount calculated by the agency." *Id.*

In accordance with these procedures, while Gallardo's personal injury suit was pending, FAHCA attached a lien for $862,688.77 on her cause of action and any future settlement thereof. When the suit settled for $800,000, Gallardo's counsel asked the state how much it would accept in satisfaction of its lien, given that the settlement included only $35,367.52 specifically allocated by the parties for past medical expenses. When there was no response, Gallardo put $300,000 into a trust account[7] and commenced an administrative action to challenge that amount. In the course of that action, FAHCA sought to recover more than the $35,367.52 specifically *allocated by the parties* for past medical expenses, arguing that it was also entitled to recover the amounts it paid from the portion of the settlement representing compensation for the recipient's future medical expenses.

---

[7] $300,000 is the amount Florida is presumptively entitled to under the formula of Fla. Stat. § 409.910(11)(f): 25 percent was deducted from the $800,000 settlement for attorney's fees ($200,000), then half of the remaining $600,000 was $300,000.

Gallardo sued the Secretary[8] of FAHCA in the district court under 42 U.S.C.

§ 1983,[9] seeking a declaration that, under federal law, Florida is not entitled to

reimbursement from anything more than the portion of the settlement representing

compensation for past medical expenses.  She represented that portion as being the

parties' unilateral allocation in the settlement to past medical expenses—that is, the

cap on Florida's reimbursement would be $35,367.52.  The suit also sought a

declaration that Florida's administrative procedure for challenging the amount of

the state's claim violates federal law.  The parties filed cross-motions for summary

judgment.

The district court granted Gallardo's motion for summary judgment and

denied FAHCA's.  *Gallardo ex rel. Vassallo v. Dudek*, 263 F. Supp. 3d 1247, 1249

(N.D. Fla. 2017).  It found that Fla. Stat. § 409.910 is preempted by federal

Medicaid law, and it enjoined FAHCA from enforcing that law by "seeking

reimbursement of past Medicaid payments from portions of a recipient's recovery

that represents future medical expenses."  The court also declared that

> the federal Medicaid Act prohibits the State of Florida from requiring
> a Medicaid recipient to affirmatively disprove § 409.910(17)(b)'s
> formula-based allocation with clear and convincing evidence to

---

[8] Elizabeth Dudek was the Secretary when this suit was filed.  That office is now held by Mary Mayhew, who has been substituted as a party. Fed. R. App. P. 43(c)(2).

[9] The Supreme Court has accepted (without discussion) that § 1983, which creates a private cause of action for the deprivation of federal rights, allows a Medicaid recipient to sue her state Medicaid agency to enforce the federal Medicaid anti-lien provision, 42 U.S.C. § 1396p(a)(1).  *See Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 632 (2013).

successfully challenge it where, as here, that allocation is arbitrary and there is no evidence that it is likely to yield reasonable results in the mine run of cases.

FAHCA now appeals.

While this appeal was pending in our Court, the Florida Supreme Court ruled on an appeal from another Medicaid recipient's administrative action to challenge the amount of the state's claim on his tort settlement. The state court held that federal Medicaid law authorizes the state to obtain reimbursement out of personal injury settlements only from the portion of a settlement that represents past medical expenses. *Giraldo v. Agency for Health Care Admin.*, 248 So. 3d 53, 56 (Fla. 2018). When that decision became final, Gallardo moved our Court to dismiss this appeal because the question of future medical expenses was now moot. We will consider and rule upon that motion in this opinion.

## II. STANDARD OF REVIEW

"We review the grant of summary judgment *de novo*, drawing all inferences and reviewing all the evidence in the light most favorable to the non-moving party." *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 939 (11th Cir. 2013).

## III. DISCUSSION

FAHCA argues that it was entitled to summary judgment because federal law does not preempt its practices of (1) seeking reimbursement for the medical

expenses it has paid from the portion of a third-party settlement to which FAHCA

did not consent that represents all medical care—both past and future expenses,

and (2) allocating tort settlements through a formula and an administrative

challenge procedure.  Each of these issues is a question of first impression in this

Court, and we consider them in turn.  But first, we discuss the legal doctrine of

conflict preemption, which the district court invoked to invalidate both policies.

### A.    Conflict Preemption

Because federal laws are "the supreme Law of the Land . . . any Thing in the

Constitution or Laws of any State to the Contrary notwithstanding," U.S. Const.

art. VI, cl. 2, "state law that conflicts with federal law is 'without effect.'"

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (quoting *Maryland v.*

*Louisiana*, 451 U.S. 725, 746 (1981)).[10]  The Supreme Court has identified two

presumptions to assist us in determining whether a state law is preempted by

implication in this way.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).[11]

First, we presume "that Congress does not cavalierly pre-empt state-law causes of

---

[10] Two other types of federal preemption of state law—express preemption and field preemption—are not at issue here.  *See generally Cipollone*, 505 U.S. at 516 (discussing the three types of preemption).  The Medicaid statutes contain no statement of express preemption and no evidence that Congress intended to occupy the entire field of single-payer health care.  To the contrary, Medicaid is by design a "cooperative" federal–state venture. *See Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006).

[11] Although *Lohr* was an express-preemption case, we have been guided by its two "cornerstones" of preemption jurisprudence in conflict-preemption cases.  *See, e.g.*, *Ga. Latino Alliance for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1263 (11th Cir. 2012).

action." *Id.* Therefore, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Two such police powers at issue here are the states' traditional authority "to protect the health and safety of their citizens" and "to provide tort remedies to [their] citizens"—matters of primarily local concern. *Id.* at 475; *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). Second, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Lohr*, 518 U.S. at 485. Therefore, we look primarily to the language of the federal statute  and the "statutory framework surrounding it" to determine whether Congress intended to preempt state law. *Id.* at 486.

Together these two principles mean that, in light of the role of the states as "independent sovereigns in our federal system," *id.* at 485, when the text of a statute "is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008) (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)). Further counseling caution in this context is the fact that the Medicaid Act is Spending Clause legislation. *See* U.S. Const. art. I, § 8, cl. 1. Because Congress's power to impose obligations upon the states under that clause "rests on whether the State voluntarily and knowingly accepts the terms" under which federal funding is

10

offered, *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981), "such legislation is binding on States only insofar as it is 'unambiguous.'" *Wos*, 568 U.S. 654 (Roberts, C.J., dissenting) (quoting *Pennhurst*, 451 U.S. at 17). "Where coordinate state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal pre-emption becomes a less persuasive one." *N.Y. Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 421 (1973).

For each of the preemption issues raised in this litigation, then, we will examine the text of the federal statutes and determine whether they evince a "clear and manifest purpose" to preempt aspects of Florida's traditional authority over the health of its citizens and its tort law. If they do not, or if Florida law does not "directly conflict" with federal law, *Wos*, 568 U.S. at 636 (quoting *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011)), the state law will stand.

## B.     Reimbursement From Portions of Settlement that Represent All Medical Care – Past and Future

The district court first concluded that, to the extent Florida law authorizes FAHCA to pursue reimbursement from anything other than those amounts of a third-party recovery representing compensation for *past* medical expenses, federal law preempts it. For the reasons that follow, and in light of the "presumption against preemption," *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009), we disagree.

### I.     *The Parties' Unilateral Allocation Does Not Bind FAHCA*

11

Preliminarily, to the extent Gallardo argues FAHCA's recovery is limited to the amount unilaterally allocated by the parties in the settlement as "past medical expenses"—$35,367.52—her argument has no merit. The parties' unilateral allocation has no bearing on FAHCA's power to seek reimbursement for medical expenses it paid and FAHCA is not bound by the parties' unilateral decision. The Supreme Court worried about just this type of situation: "The [*Ahlborn*] Court nonetheless anticipated the concern that some settlements would not include an itemized allocation. It also recognized the possibility that Medicaid beneficiaries and tortfeasors might collaborate to allocate an artificially low portion of a settlement to medical expenses." *Wos*, 568 U.S. at 634 (citing *Ahlborn*, 547 U.S. at 288). Finding otherwise would lead to incomprehensible results: for example, here, the parties unilaterally allocated $35,367.52 of the settlement amount as "past medical expenses," but what if the parties had decided to unilaterally allocate only $20,000, would FAHCA's reimbursement be limited to only $20,000? Or, put another way, what if Gallardo's parents estimated the true value of her claim at $40,000,000—making the explicit allocation in the settlement for past medical expenses half of what it is now, $17,683.76—would FAHCA's reimbursement be limited to that amount? According to Gallardo, in both scenarios, FAHCA's reimbursement would be limited by the parties' unilateral allocation and determination. But that cannot be true. Parties' unilateral allocations as to what

12

constitutes "past medical expenses" do not, and should not, bind FAHCA. FAHCA is permitted to seek reimbursement from parts of the settlement money that represent medical care—including those that the parties have designated as "future medical care."

Therefore, when the parties do not seek FAHCA input on the settlement allocation for medical expenses on the front end, FAHCA has its statutory allocation formula on the back end to determine how much of the settlement should be allocated to medical expenses. As set forth below, to the extent that the Florida law permits FAHCA to recover monies it paid from settlement monies ultimately allocated to all medical care, past and future, "but not in excess of medical assistance paid by Medicaid," Fla. Stat. § 409.910(4), it does not conflict with the text of the federal Medicaid statutes and is thus not preempted on this basis.

II.    *Federal Medicaid Law Does Not Preempt FAHCA's Practice of Seeking Reimbursement from Portions of a Settlement that Represent All Medical Expenses*

To address the question of whether FAHCA can seek reimbursement of medical expenses it paid from those portions of the parties' settlement that represent all medical expenses—past and future—we turn to the text of the federal Medicaid statutes to determine if they conflict with (and thus preempt) the Florida statute. Because the text of the federal Medicaid statutes only prohibit a State from

asserting a lien against any part of a settlement not "designated as payments for medical care," *Ahlborn*, 547 U.S. at 284, and Florida's statutes provide it can recover only for "medical assistance paid by Medicaid [to a Medicaid beneficiary]," Fla. Stat. § 409.910(4), as well as a formula for calculating what portion of a settlement represents such medical care, Fla. Stat. § 409.910(11)(f) and (17)(b), the text and structure of the federal Medicaid statutes do not conflict with Florida law and thereby do not preempt it.

As a starting point, federal law prohibits states from imposing liens "against the property of any individual . . . on account of medical assistance paid" to that beneficiary. 42 U.S.C. § 1396p(a)(1) ("anti-lien provision"). An exception to the anti-lien provision is the provision (42 U.S.C. § 1396a(a)(25)) which requires state Medicaid agencies to pursue reimbursement from liable third parties "to the extent of such legal liability"—the entire amount Medicaid paid on behalf of the individual.[12] To aid the States' reimbursement requirement, the Medicaid Act provides an assignment provision (42 U.S.C. § 1396k) which mandates that states require Medicaid recipients to assign their rights to payments for medical care

---

[12] A State plan for medical assistance must "take all reasonable measures to ascertain the legal liability of third parties" and "that in any case where such legal liability is found to exist after medical assistance has been made available on behalf of the individual . . . the State or local agency will seek reimbursement for such assistance to the extent of such legal liability." 42 U.S.C. §§ 1396a(a)(25)(A, B). The State must have in effect laws providing for such reimbursement rights. 42 U.S.C. § 1396(a)(25)(H).

from any third party.[13]  This assignment for the beneficiary's right to payments for medical care sets a "ceiling" on the State's potential share of a recovery.  *Wos*, 568 U.S. at 633.  To be sure, the federal statutes are clear that third-party reimbursement is required—indeed, permitted—only for medical expenses, and not for other damages that may be covered by a tort settlement, such as lost wages or pain and suffering.  *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 284–85 (2006).  To hold otherwise would be, in the words of *Ahlborn*, "absurd and fundamentally unjust."  *Id.* at 288 n. 19.  And neither party suggests that the Florida statute would permit FAHCA to recover from the settlement anything other than the portion that represents medical expenses.

But what restrictions, if any, do the federal statutes impose on a state agency seeking reimbursement for amounts it has paid from settlement monies allocated to medical expenses?  After all, as noted above, the assignment provision in section 1396k(a)(1)(A) broadly requires States to provide that Medicaid recipients must assign to the state "any" of their rights to "payment for medical care from any third party" as a condition of their acceptance of benefits.  And that provision applies before a recipient receives a single dollar's worth of medical care through

---

[13] A State plan for medical assistance must provide that "as a condition of eligibility for medical assistance" from Medicaid, an individual "is required . . . . to assign any rights . . . . to payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A).

15

Medicaid. In contrast to the broad assignment provision set forth in section 1396k, the language of 42 U.S.C. § 1396a(a)(25)(H) requires states to enact third-party liability laws under which "the State is considered to have acquired the rights . . . to payment by any other party," "to the extent that payment *has been made* under the State plan for medical assistance for health care items or services furnished." 42 U.S.C. § 1396a(a)(25)(H) (emphasis added).[14] This past-tense language, Gallardo and the district court say, clearly shows that only reimbursement from portions of a settlement allocated to past expenses is permitted. The dissent also embraces this argument. But the plain language of this provision (or any other provision of the Medicaid statutes, for that matter) clearly contains no such limitation. While section 1396a(a)(25)(H) is narrower than the assignment provision in describing the subrogation rights a state acquires when "payment has been made," it simply provides *for what* the state can get reimbursed now that it has a general assignment on all medical expenses—it can recover medical

---

[14] The dissent dubs 42 U.S.C. § 1396a(a)(25)(H) as the "specific assignment provision." But, unlike the assignment provision (42 U.S.C. § 1396k(a)(1)(A))—a subsection in section 1396k titled "*Assignment*, enforcement, and collection of rights of payments for medical care; establishment of procedures pursuant to State plan; amounts retained by State," *id*. which mandates a State require assignment from a liable third party for the medical expenses paid by the state—42 U.S.C. § 1396a(a)(25)(H) is a subsection in section 1396a which focuses on what "[a] State plan for medical assistance must--provide," 42 U.S.C. § 1396a(a)(25)(H), not what a State must require an individual to assign. And while the dissent does accurately quote the language of 42 U.S.C. § 1396a(a)(25)(H) initially, it later says "the state gets the right to only third party payments made for past medical care." However, this language is what the dissent concludes the statute means, not what the statute actually provides.

16

expenses it has already paid.[15]  Gallardo, the district court, and the dissent,

however, all make the same leap-in-logic mistake here and assert that because the

agency is limited to recovering monies it paid in the past, it necessarily is limited

to recovering these monies *from* what represents compensation in the settlement

for "past medical expenses."  But while the language of the federal Medicaid

statutes clearly prohibits FAHCA from seeking reimbursement *for* future expenses

it has not yet paid (which it is not seeking to do in this case), the language does not

in any way prohibit the agency from seeking reimbursement *from* settlement

monies for medical care allocated to future care.[16]  To take an example offered by

---

[15] Congress, in enacting § 1396a(a)(25)(H) sixteen years after it enacted § 1396k(a)(1)(A), did not contradict or restrict § 1396k(a)(1)(A); rather it added to the exceptions to the anti-lien provision by adding a specific assignment permission for when payment has been made.  Accordingly, the dissent's citation to the general/specific canon is inapposite here because the statutes can be harmonized *in pari materia*. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183-85, 252 (2012), noting that the general/specific canon is in effect only when a specific provision contradicts a general provision—i.e., a general prohibition that is contradicted by a specific permission; but when they can exist in harmony as laws dealing with the same subject they should be read as such—a general permission followed by a more specific permission.

[16] The very existence of this dispute about the federal statutory text answers the preemption question.  Federal law must evince a "clear and manifest purpose" to supersede the states' traditional powers over health care and tort law.  What is evident here is at most ambiguity, and when it comes to preemption, mere ambiguity is not enough.  We conclude, therefore, that in the absence of a clearly expressed intent to preempt state law in this area, Florida's policy must be allowed to stand.
    The dissent argues that the question is not, in fact, close, because "most of the country" believes this question is not a close one and "most courts have held that the Medicaid Act clearly preempts state law" in cases like this one.  That charge, on its face, seems persuasive.  But what does the dissent mean by "most courts"?  Not what one might think—just one circuit court, two district courts, and a handful of state courts of appeal and state supreme courts.  These cases hardly suggest that this issue is settled.  And looking at the one decision rendered by our sister circuit, we find that it is not.  In *E.M.A. ex rel. Plyer v. Cansler*, 674 F.3d 290, 312 (4th Circuit.

17

the dissent, the fruit stand analogy, one step further: (1) imagine you sold $10 worth of apples, $10 worth of oranges and $10 worth of cucumbers for a total of $30; (2) you owed your town $15 for a license it granted you to pick apples in the town's orchards; and (3) your town passed a law stating that, until the license fee is paid in full, it gets the rights "to payment by any other party" for fruits. The text of the law, permitting reimbursement for the apple license from payments by any other party for "fruits" would allow the town to take $15 from payments made for "fruits"—apples *and* oranges—and is not limited to the $10 of apples sold. If, however, you sold only $5 worth of apples, $5 worth of oranges, and $20 worth of cucumbers, the town would be limited to the $10 paid for fruits and could not take the remaining $5 from the payments made for cucumbers. Similarly, here, according to the plain text of the Medicaid statutes, the State is allowed to seek reimbursement for payments it made for medical care under section 1396a(a)(25)(H) (apple picking license) from settlement monies allocated to all medical care per section 1396k(a)(1)(A) (fruits) and the only limitation on its recovery is that it cannot seek reimbursement from settlement amounts allocated to

2012), *aff'd sub nom. on other grounds Wos v E.M.A. ex rel. Johnson*, 568 U.S. 627 (2013)—notably, this is the case underlying the Supreme Court case we have discussed extensively herein—the dissent points to language in the opinion where the Fourth Circuit was simply summarizing (perhaps a little loosely) the holding in *Ahlborn*. The Fourth Circuit did not actually render a decision on the issue involved in this case. And while the dissent acknowledges that two district courts and one state supreme court have agreed with the majority, it dismisses them, characterizing them as "[a] fleeting few." In any event, this issue is hardly a settled one.

categories other than medical care under section 1396p(a)(1) and (b)(1) (cucumbers).

Nor has the Supreme Court held otherwise, despite the dissent's suggestion to the contrary.  In *Ahlborn*, the Supreme Court examined some of the Medicaid provisions we cite today.  In that case, the Court differentiated between reimbursement from the portion of a settlement that represents medical expenses and all other parts of a settlement which the State cannot reach under the anti-lien provision.  In interpreting § 1396k(a)(1)(A)'s text—requiring recipients to assign "any rights . . . . to payment for *medical care* from any third party"— the Supreme Court stated that a State may obtain only an assignment of right to third-party payments for "medical expenses—not lost wages, not pain and suffering, not an inheritance."  *Ahlborn*, 547 U.S. at 281.  And although *Ahlborn* did not resolve how to determine what portion of a settlement represents medical care, *see Wos,* 568 U.S. at 634, the Supreme Court repeatedly made clear that the State's assignment and reimbursement was from the portion of a settlement that represented "medical expenses" and "medical care" and did not limit it solely to "*past*" medical expenses.[17]  The dissent ignores that nuance, arguing that

---

[17] *See Ahlborn*, 547 U.S. at 275 ("The Eighth Circuit reversed. It held that ADHS was entitled only to that portion of the judgment that represented payments for medical care. For the reasons that follow, we affirm."); *id*. at 280 ("We must decide whether ADHS can lay claim to more than the portion of Ahlborn's settlement that represents medical expenses. The text of the federal third-party liability provisions suggests not; it focuses on recovery of payments for medical care." (footnote omitted)); *id*. at 281 ("Again, the statute does not sanction an

19

"[a]lthough the Supreme Court didn't feel the need to spell it out, the logical and necessary extension of this rule is that the state can recover only from payments marked for past medical care."[18]  Putting aside the dissent's willingness to read into a Supreme Court case a holding (and add an extra word—"past") the Court did not reach, the statute itself supports no such reading, as noted above.

And the dissent ignores a crucial premise underlying *Ahlborn*.  In settling the case, the parties did not allocate categories of damages and the State did not participate in the settlement; however, to facilitate the district court's decision, the State at trial stipulated to an amount in the settlement agreement attributable to "medical payments made."  *Ahlborn*, 547 U.S. at 274.  This amount was much less than the past medical expenses, so the district court never had to reach the issue of the state's entitlement to amounts in the settlement agreement attributable to future medical expenses. The stipulation there put a cap on the amount recoverable by the State even if the amount in the settlement allocated for *past* medical expenses

---

assignment of rights to payment for anything other than medical expenses—not lost wages, not pain and suffering, not an inheritance."); *id*. at 282 ("[U]nder the federal statute the State's assigned rights extend only to recovery of payments for medical care. Accordingly, what § 1396k(b) requires is that the State be paid first out of any damages representing payments for medical care before the recipient can recover any of her own costs for medical care."); *id*. at 284 ("There is no question that the State can require an assignment of the right . . . to receive payments for medical care. . . . [T]he exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies.").

[18] The dissent also says "[b]ut even if the actual letter of Ahlborn doesn't command preemption . . . Ahlborn's logic necessarily compels it" and "the Court never used the term "past medical care" (even though that's clearly what it meant…)."

exceeded the stipulation. *See Ahlborn*, 547 U.S. at 284 n. 13. Here, however, FAHCA never agreed to the amount attributable in the settlement agreement to past or future medical expenses. Accordingly, as described herein, Florida's Medicaid Third-Party Liability Act would allow FAHCA to recover the monies it paid up to (but not in excess of) $300,000 unless Gallardo is able to show that the amounts she recovered from a third party for her medical expenses, past and future, are less than that amount. *See* § 409.910(17)(b).[19] Thus, as "discerned from the language of the . . . statute," *Lohr*, 518 U.S. at 485, and heeding the Supreme Court's findings that the anti-lien provisions only "prohibits a State from making a claim to any part of a Medicaid beneficiary's tort recovery not 'designated as payments for medical care.'" *Wos*, 568 U.S. at 636 (quoting *Ahlborn*, 547 U.S. at 284), we conclude that § 409.910(17)(b) of Florida's Medicaid Third-Party Liability Act does not conflict with federal law and is not preempted.

Gallardo has argued, however, that the question before us is moot because FAHCA is now bound by the recent decision of the Florida Supreme Court in *Giraldo* and thus can seek reimbursement only for amounts allocated by the

---

[19] In effect, then, FAHCA has two ceilings on its recovery: one, it can get reimbursed up to "but not in excess of medical assistance paid by Medicaid," Fla. Stat. § 409.910(4); the second, a lower ceiling, is the amount designated by the formula. Even if a higher amount than $300,000 in the settlement represents compensation for medical care, FAHCA is limited to reimbursement only from the $300,000 allocated by the formula.

settlement to past medical expenses. *See Giraldo*, 248 So. 3d at 56 (interpreting only 42 U.S.C. § 1396a(a)(25)(H)). But first, as both parties acknowledge, this issue is a question of federal law, and this federal Court is not bound by a state court's interpretations of federal law. *Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1064 (11th Cir. 1996). And second, the court in *Giraldo* while citing Ahlborn, makes the same mistake in logic about section 1396a(a)(25)(H) that the district court and the dissent make here. Thus, whatever effect *Giraldo* may have upon any other case, *Giraldo* does not bar us from granting the relief that Florida seeks in the present case, as Gallardo has conceded. Oral Arg. at 36:52. "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993). Because we can give meaningful relief, this case is not moot. Accordingly, Gallardo's motion to dismiss this appeal must be denied.

22

### C.    Statutory Formula and Challenge Procedure

The district court also concluded that federal law preempts Florida's method of allocating the share of a personal injury settlement from which it is entitled to seek reimbursement: its formula of half the settlement after 25 percent attorney's fees, combined with the procedure in which a recipient may challenge that allocation in an administrative hearing by clear and convincing evidence. *See* Fla. Stat. § 409.910(11)(f), (b).  For the reasons that follow, and again in light of the presumption against preemption, we disagree.

The district court relied on the Supreme Court's 2013 decision in *Wos*, in which the Court held that the federal Medicaid anti-lien provision, 42 U.S.C. § 1396p(a)(1), preempted North Carolina's third-party reimbursement scheme, which automatically allocated one-third of any recipient's tort settlement as reimbursement for medical expenses. *Wos*, 568 U.S. at 636.  In *Wos*, the Supreme Court explained that North Carolina's statutory scheme conflicted with federal law by "set[ting] forth no process" for determining what portion was actually for medical expenses, where the state did not show that the one-third allocation was "reasonable in the mine run of cases." *Id.* at 636, 637.  The district court in this case found that Florida's scheme also suffered from these flaws.  It concluded that, although Florida provides a process for challenging Florida's claim, the formula's allocation "is nearly impossible to rebut" and that "requiring a Medicaid recipient

23

to overcome a hodgepodge of hurdles amounts to a quasi-irrebuttable presumption."

Our preemption analysis on this issue begins with the "ultimate touchstone," "the purpose of Congress" which "primarily is discerned from the language of the . . . statute." *Lohr*, 518 U.S. at 485. On this point we are bound by the Supreme Court's statement in *Wos*: "The Medicaid anti-lien provision prohibits a State from making a claim to any part of a Medicaid beneficiary's tort recovery not 'designated as payments for medical care.'" *Wos*, 568 U.S. at 636 (quoting *Ahlborn*, 547 U.S. at 284). Thus, "[a]n irrebuttable, one-size-fits-all statutory presumption is incompatible with the Medicaid Act's clear mandate" because "[i]n some circumstances . . . the statute would permit the State to take a portion of a Medicaid beneficiary's tort judgment or settlement not 'designated as payments for medical care.'" *Id.* at 639, 644.

In light of the clear mandate against an "irrebuttable, one-size-fits-all" presumption, we next ask whether Florida's scheme directly conflicts with it. "State law is pre-empted 'to the extent of any conflict with a federal statute,'" *Hillman v. Maretta*, 569 U.S. 483, 490 (2013) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)), but no further. We find that the Florida scheme differs significantly from the North Carolina scheme that the *Wos* Court

24

found was preempted, and we conclude that it does not directly conflict with federal law.

Unlike North Carolina, which imposed an irrebuttable formulaic allocation, Florida "provide[s] a mechanism for determining whether" its formulaic allocation is a reasonable approximation of a recipient's medical expenses. *See Wos*, 568 U.S. at 637. Under the Florida Medicaid Third-Party Liability Act,

> a recipient . . . may contest the amount designated as recovered medical expense damages payable to the agency pursuant to the formula specified in paragraph (11)(f) by filing a petition . . . with the Division of Administrative Hearings. . . . In order to successfully challenge the amount designated as recovered medical expenses, the recipient must prove, by clear and convincing evidence, that the portion of the total recovery which should be allocated as past and future medical expenses is less than the amount calculated by the agency pursuant to the formula set forth in paragraph (11)(f).

Fla. Stat. § 409.910(17)(b).

We reject the district court's assertions that Florida's allocation is "nearly impossible to rebut" and "quasi-irrebuttable." Nothing in the statute or the record supports those assertions. "Clear and convincing evidence" is not an "impossible" evidentiary standard. It is a familiar and widely used standard of proof in Florida civil proceedings, requiring evidence "of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established." *S. Fla. Water Mgmt. Dist. v. RLI Live Oak, LLC*, 139 So. 3d 869, 872–73 (Fla. 2014) (listing types of cases where this

25

standard applies). Most importantly for purposes of our preemption analysis, nothing about this standard of proof stands in clear conflict with federal law under *Wos*.

Our conclusion that Florida's statutory formula is not preempted by federal law finds support in the Supreme Court's extensive dicta in *Wos* about what North Carolina could have done differently to avoid a conflict with federal law. *See Wos*, 568 U.S. at 641–43. The Court opined that "a judicial or administrative proceeding" could be an appropriate way to allocate a settlement. *Id.* at 638–39. Noting that "States have considerable latitude to design administrative and judicial procedures to ensure a prompt and fair allocation of damages," the Court favorably pointed out several states' specific procedures, all involving "rebuttable presumptions and adjusted burdens of proof." *Id.* at 641. Oklahoma's procedure, which it labeled "more accurate" than North Carolina's, is similar to Florida's: it uses a formula that allocates 100 percent of a settlement after attorney's fees, and then allows the recipient to rebut that allocation by clear and convincing evidence. *See id.* (citing Okla. Stat. tit. 63 § 5051.1(D)(1)(d)).

Because we find that Florida's approach to threading the needle of federal third-party reimbursement requirements does not directly conflict with them, we conclude that it is not preempted.

## IV.   CONCLUSION

26

Gallardo's motion to dismiss this appeal as moot is **DENIED**. The judgment

of the district court is **REVERSED** and **REMANDED**.

WILSON, Circuit Judge, concurring in part and dissenting in part:

Today this court tells Florida that it can pocket funds marked for things it never paid for.[1]  The court does so even though the Medicaid Act says differently, the United States Supreme Court says differently, and most other courts say differently.  Although I agree with the majority that federal law does not preempt Florida's allocation process (though I use a slightly different analysis, as I explain in Part II), I disagree with its view that federal law does not preempt Florida's self-proclaimed right to third-party payments for future medical care.  On this larger issue, I must dissent.

## I.

There's no need to repeat the majority's rundown of the dizzying Medicaid Act.  But as the Act is a labyrinth, a quick glossary might help.  There are five provisions to remember.  Two are general rules; three are exceptions.

First is the anti-lien provision.  This section says that no lien "may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the [s]tate plan [with exceptions not relevant here]."  42 U.S.C. § 1396p(a)(1).

---

[1] The majority calls the defendant "FAHCA" throughout its opinion.  Since FAHCA is conducting business for the state, and since the Medicaid Act speaks in terms of what a state must do to comply with the Act, I will refer to FAHCA as "Florida" or "the state" for simplicity.

Second, the anti-recovery provision. It says that no "adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the [s]tate plan may be made [also with exceptions not relevant here]." *Id.* § 1396p(b)(1). These provisions are the general rules. Read "literally and in isolation," they stop states from picking at a Medicaid recipient's tort recovery. *See Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 284 & n.13 (2006).

That brings us to the exceptions, and the third provision to remember: the third-party-liability provision. This section tells the state to first "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan." 42 U.S.C. § 1396a(a)(25)(A). If the state finds "after medical assistance has been made available on behalf of the [recipient]" that a third party is liable for the recipient's injuries, the state must "seek reimbursement for such assistance to the extent of such legal liability." *Id.* § 1396a(a)(25)(B).

Fourth up is the general assignment provision. *Id.* § 1396k(a)–(b). This provision generally entitles the state to the recipient's right to "payment for medical care from any third party." *Id.* § 1396k(a)(1)(A). It then notes that the state can keep those payments "as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such

29

assignment was executed . . . and the remainder of such amount collected shall be paid to such individual." *Id.* § 1396k(b).

The last exception—the crux of this appeal—is the specific assignment provision. It applies "to the extent that payment has been made under the [s]tate plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance." *Id.* § 1396a(a)(25)(H). In that event, the state must have in effect laws that, "to the extent that payment has been made under the [s]tate plan for medical assistance for health care items or services furnished to an individual," give the state the right to recover third-party payments "for such health care items or services." *Id.*[2]

These provisions, taken together, set up the state recovery scheme. The general rules protect a Medicaid recipient's recovery from the state; the exceptions list the few times when the state can claw into a recipient's coffers. But this point bears repeating: Without an exception, the general rules barring state recovery apply. *See Ahlborn*, 547 U.S. at 284–85. The state can recover only what the exceptions say it can recover. *See id.*

---

[2] The majority uses different names for the last two provisions. It calls the general assignment provision the "assignment provision" and references the specific assignment provision only by its statutory code. Given how important these provisions are here, I respectfully diverge from the majority's framing and will use distinct labels for clarity. And despite the majority's suggestion in footnote 14 (and as we will discuss more below), the specific assignment provision *does* focus on "what a State must require an individual to assign"—it tells the state that it must have laws assigning to it the recipient's right to payment for past medical care. So this label is accurate and will help us make sense of the Medicaid Act.

In *Ahlborn*, the Supreme Court clarified the narrow reach of the exceptions. It held that the exceptions entitle the state to only the part of a Medicaid recipient's recovery that represents payment for "medical care." *Id.* at 282. That makes sense—under the Medicaid program, the state pays for only a recipient's medical care, and so the state can recover from only the part of a recipient's recovery that represents payment for medical care. The question here is whether the state can reach the part of a recipient's recovery that represents payment not for past medical care, but for *future* medical care—care that the state has never paid for.

The answer is no. Under the Medicaid Act, the state can reimburse itself only from the amount of the recovery that represents payment for past medical care. Federal law preempts state law to the contrary. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) ("Where state and federal law directly conflict, state law must give way.").

Despite the majority's efforts, the question is not close. The statute's plain text demands this result. As the United States Supreme Court and most other courts have recognized.[3]

---

[3] Before we go on, let's briefly discuss what this dissent is not about. The majority starts its analysis by rejecting a bad argument—that the state is limited to the part of the settlement that the recipient and the tortfeasor unilaterally allocated as payment for past medical care. *See* Majority Op. at 12–13. The majority and I agree on this point. As I explain in Part II, the Supreme Court has made clear that the recipient cannot unilaterally allocate away the state's interest in the part of her recovery that represents payment for past medical care. *See infra* at 53–61. To protect against abusive unilateral allocations, the Court has armed the state with powerful tools to determine what part of a recovery represents payment for past medical care:

## A.

The gist of the majority's holding is that its hands are tied: Because the exceptions do not clearly limit the state to the part of the recovery that represents payment for past medical care, respect for state law precludes conflict preemption. The problem for the majority is that the exceptions *do* clearly limit the state to the part of the recovery that represents payment for past medical care. In fact, they're riddled with references to the past.

Consider the specific assignment provision. It declares that when a state acquires a recipient's right to third-party payment, the state acquires only the right to payment for the recipient's past medical care—the only care for which the state has paid:

> [T]o the extent that *payment has been made* under the [s]tate plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the [s]tate has in effect laws under which, *to the extent that payment has been made* under the [s]tate plan for medical assistance *for health care items or services furnished* to an individual, the [s]tate is considered to have acquired the rights of such individual to payment by any other party *for such health care items or services* . . . .

42 U.S.C. § 1396a(a)(25)(H) (emphasis added).

---

judicial determinations, presumptive allocations, and administrative hearings. *See id.* at 53–57. The majority and I diverge on a different point: Whether, after the state figures out what part of the recovery represents payment for past medical care, it can then take from the part of the recovery that represents payment for future medical care. That is what this dissent is about.

32

The paragraph starts with the headline "to the extent that *payment has been made*." *Id.* (emphasis added). Then, to eliminate any doubt, it repeats itself: "[T]o the extent *that payment has been made* under the [s]tate plan for medical assistance *for health care items or services furnished* to an individual," the state gets the right to third-party payments for "*such* health care items or services." *Id.* (emphasis added). This latter phrase naturally refers to the only health care items or services that have been "furnished" to the recipient—past medical care. *See, e.g.*, *Latham v. Office of Recovery Servs.*, 2019 UT 51, ¶ 32 (Utah 2019), *cert. denied*, *Office of Recovery Servs. v. Latham*, 140 S. Ct. 852 (2020).

So this exception, in no uncertain terms, says that the state gets only the right to third-party payments made for the recipient's past medical care—the only care for which the state has paid. In the settlement context, the "payments made for the recipient's past medical care" are, as all agree, the parts of the settlement that represent payment for past medical care. The specific assignment provision thus limits the state to that part of the recovery. And the legislative history confirms that this is the right reading. *See* H.R. Rep. No. 103-111, 210 (1993) ("The Committee bill provides that, in any case where a third party has a legal liability *to make payment for services <u>provided</u> to a Medicaid beneficiary*, a State is subrogated to the right of any other party to *payment for <u>such services</u>* to the extent that payment has been made by the Medicaid program." (emphasis added)).

33

**B.**

Rather than tackle this seemingly clear directive, the majority claims that the very existence of a contrary interpretation creates ambiguity, barring conflict preemption. But that's true only if the contrary reading is reasonable. *See Houghton v. Payne*, 194 U.S. 88, 99 (1904) (holding that a statute is ambiguous when it is "susceptible of two reasonable interpretations"); *Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1210 (11th Cir. 2009) (noting that the "very definition of ambiguity" is the existence of "two *reasonable*, competing interpretations" (emphasis added)). The majority's reading is not.

Aside from a claim that the specific assignment provision does not textually distinguish between past and future medical care (which, as explained before, it does), the majority hangs its hat on the general assignment provision. This provision, unlike the specific assignment provision, does not refer to the past. It mentions only that a recipient assigns to the state the recipient's right to "payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A). Put another way, the general assignment provision says that the state gets the recipient's right to third-party payments for all medical care, past *and* future.

Yet a simple rule settles these inconsistencies: The more specific provision controls. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012) (noting that when "there is a conflict between a general

provision and a specific provision, the specific provision prevails"). To be sure, the general assignment provision describes the state's right to third-party payments for medical care generally. But the specific assignment provision describes what happens when the state seeks to recover third-party payments for medical care that the state fronted for the recipient—exactly the issue presented here. *See Latham*, 2019 UT 51, ¶ 35.

And specificity isn't the only problem for the majority; another is time. As Florida highlights in its briefs, Congress passed the specific assignment provision 16 years *after* the general assignment provision. *Compare* Medicare-Medicaid Anti-Fraud and Abuse Amendments, Pub. L. No. 95-142, 91 Stat. 1175 (1977) (enacting the general assignment provision), *with* Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, 107 Stat. 312 (1993) (enacting the specific assignment provision). It is thus the most recent word on the subject. And when interpreting statutes, "we rely on the long-standing principle that, if two statutes conflict, the more recent or more specific statute controls." *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 948 (11th Cir. 2001). The specific assignment provision wins on both counts. So it is the more on-point authority.

The majority has a different take, though. It says that the specific assignment provision simply "provides *for what* the state" can recover, not *from where* the state can recover. *See* Majority Op. at 16–19. In the majority's eyes, the

35

specific assignment provision merely explains that the state can recover only up to the amount that it paid for past medical care. It does not, per the majority, say that the state can recoup that amount from only the part of the recovery that represents payment for past medical care.

And yet that can't be right. For starters, both the general assignment provision and the third-party-liability provision already explain "*what*" the state can recover—each makes clear that the state can reimburse itself only up to the amount that it spent on past medical care. The general assignment provision says that the state can take a recipient's third-party payments only as "necessary to reimburse [the state] for medical assistance payments made [for the recipient] . . . the remainder of such amount collected shall be paid to [the recipient]." 42 U.S.C. § 1396k(b). And the third-party-liability provision—which comes before the specific assignment provision in 42 U.S.C. § 1396a(a)(25)—tells us that when the state has paid for "medical assistance," the state gets reimbursement "for such assistance." *See id.* § 1396a(a)(25)(B). Layman's terms: When the state has paid for the recipient's past medical care, it is entitled to reimbursement only for the cost of the recipient's past medical care. Why, then, would Congress reiterate (for a third time) this bedrock principle in the specific assignment provision? The answer is that it wouldn't. And we should avoid any reading that relies on this redundancy. *See United States v. Fuentes-Rivera*, 323 F.3d 869, 872 (11th Cir.

36

2003) (per curiam) (explaining that we interpret statutory provisions "so that no words shall be discarded as being meaningless, redundant, or mere surplusage").

At any rate, we need not turn to tools of statutory interpretation to knock down the majority's construction; the statute's plain language is enough. The specific assignment provision says that the state gets only the recipient's right "to payment by any other party" for past medical care. 42 U.S.C. § 1396a(a)(25)(H) (emphasis added). This means that the state acquires only the recipient's right to whatever payment the third party paid for past medical care. Put differently, the state can recover from only the part of the settlement (i.e., the payment) that was paid for past medical care. Florida doesn't somehow get the right to pick at other third-party payments, like the part of the settlement paid for future medical care.

An example confirms that this reading is right. Imagine that you own a fruit stand. One day, you sell your friend $5 worth of apples and $5 worth of oranges for a total of $10. Now let's also say that you owe your town $10. To recoup the debt, your town passes a law entitling the town to your rights "to payment by any other party" for apples. Putting aside that you might vote your city council out of office in the next election, you would naturally read this law to give your town the right to $5—the amount of the "payment" that your friend gave you for the apples. You wouldn't think that the town could take the full $10 dollars that your friend paid you, because part of that payment was paid for oranges. And it doesn't matter

37

that you owe the town $10—the town limited itself to third-party payments paid

for apples, and so that is all it can recover.

The specific assignment provision is no different.  It entitles the state to

recover from only third-party payments for past medical care.  So the state gets the

right to recover from whatever amount the third party paid for past medical care,

no matter if the recipient's past medical bills exceed the part of the settlement paid

for past medical care.  *See id.*

So despite the majority's effort to make this a dispute over *what* the state

may recover, that's not what we're debating—everyone agrees that the state can

recover only up to the amount that it paid for the recipient's past medical care.  We

are debating *where* the state can recover those expenses from, or said differently,

whether the state is limited to reimbursing itself from the part of the recipient's

settlement that represents payment for past medical care.  The plain language of

the specific assignment provision answers that question: The state can take from

only the part of the settlement paid for past medical care.  Nothing more.[4]

---

[4] For what it's worth, this rule makes good sense.  Yes, this provision may prevent the state from reimbursing itself fully for the amount that it spent on the recipient's past medical care.  This is because the part of a recipient's tort recovery paid for past medical care could be less than the actual amount of those costs.  Yet the Medicaid Act makes clear that the state has a right to recover only for what it has paid—the recipient's past medical costs.  So the Act necessarily fractionalizes the state's recovery to encompass only the fraction of the settlement that represents those costs.  Otherwise, the state could swallow parts of the settlement that have nothing to do with the benefits that the state has fronted for the recipient (here, the part of the settlement representing payment for the recipient's future medical care).  As I explain more below, the Supreme Court has rejected that outcome—the outcome that the majority condones here—

38

And so contrary to the majority's footnote 15, the general assignment provision and the specific assignment provision are *not* in harmony.  The general assignment provision says that the state gets the right to all third-party payments made for medical care.  *See id.* § 1396k(a)(1)(A).  The specific assignment provision says that the state gets the right to only third-party payments made for past medical care.  *See id.* § 1396a(a)(25)(H).  These provisions cannot be reconciled.  Since the specific assignment provision is more recent and more on point, *see supra* at 34–36, it applies over the general assignment provision.  And with the general assignment provision vanished, the majority's reading has no leg to stand on.

## C.

Still, the majority might say, the text of the Medicaid Act is just not clear enough to warrant conflict preemption.  It is, after all, a Byzantine enterprise.  *Ga., Dep't of Med. Assistance ex rel. Toal v. Shalala*, 8 F.3d 1565, 1568 (11th Cir. 1993).  Luckily though, if there were ever a riddle about what this text means, *Ahlborn* unraveled it.

### 1.

---

calling it "absurd and fundamentally unjust."  *See Ahlborn*, 547 U.S. at 288 n.19.  And as I also explain more below, the state has several Court-sanctioned tools to protect against the recipient allocating away the state's limited recovery interest.  *See infra* at 53–57.

In *Ahlborn*, the Supreme Court analyzed the interplay between the general rules and the exceptions.  Faced with a claim that a state can recoup its debt from any part of a recipient's recovery, the Court said no.  It held, in a nine-to-nothing opinion, that the Act's plain text "makes clear" that when the state has paid for "health care items or services furnished" to a recipient, "the [s]tate must be assigned" only "the rights of the recipient to payment by any other party for such health care items or services."  *See Ahlborn*, 547 U.S. at 281–82 (alterations accepted) (emphasis omitted).  Put another way, the state can claim only third-party payments for medical care that the state paid for first.  *See id.*; *accord supra* at 28–39.

Although the Supreme Court didn't feel the need to spell it out, the logical and necessary extension of this rule is that the state can recover only from third-party payments marked for past medical care.  Indeed, *Ahlborn* held that the exceptions allow the state to take only from a recipient's recovery for medical care because medical care was the only thing that the state had paid for.  *See id.*  By extension, the exceptions allow the state to take only from a recipient's recovery for past medical care because past medical care is the only thing that the state has paid for.

The Court made this point clear through an example.  It analogized to a state-court case in which the state paid workers'-compensation benefits to the

40

spouse of an employee whose injuries were caused by a third-party tortfeasor.  *See*

*id.* at 288 n.19 (citing *Flanigan v. Dep't of Labor & Indus.*, 869 P.2d 14, 17 (Wash.

1994)).  After the spouse recovered loss-of-consortium damages from the

tortfeasor, the state sought the rights to the spouse's loss-of-consortium damages to

pay itself back for the workers'-compensation benefits.  *See Flanigan*, 869 P.2d at

15.  The Washington Supreme Court rejected this bid, explaining that the state

could not reach the spouse's loss-of-consortium damages, because the state did not

"cover" the spouse's "damages for loss of consortium."  *Id.* at 17.  *Ahlborn*

approved of this result, recognizing that the state agency there could not "share" in

the part of the recovery representing loss-of-consortium damages, because the state

had "provided no compensation" for those damages.  *See* 547 U.S. at 288 n.19.

Such a result would be "absurd and fundamentally unjust."  *See id.*

So too with settlement proceeds marked for a recipient's future medical care.

Florida has never paid for the recipient's future medical care.  And thus Florida

cannot "share" in the recipient's right to settlement proceeds paid for future

medical care.  *See id.*  Such a result would be "absurd and fundamentally unjust."

*See id.*

Another *Ahlborn* example underscores this rule.  After explaining that the

state can recover only from settlement proceeds representing payment for "health

care items or services" that the state paid for first, the Court emphasized that "the

statute does not sanction an assignment of rights to payment for anything other than medical expenses—not lost wages, not pain and suffering, not an inheritance." *Id.* at 281. Although "the Court did not include 'future medical expenses' in that list, it would have fit." *Latham*, 2019 UT 51, ¶ 36. Because just as the state has fronted no part of a recipient's wages, pain and suffering, or missing inheritance, the state has fronted no part of a recipient's future medical bills. The state has paid for only the recipient's past medical bills. And so the state can lay claim to only that part of the recipient's recovery. *See Ahlborn*, 547 U.S. at 281.

The bottom line then is this. *Ahlborn* teaches that the Act's past-tense references aren't just references: They're restrictions. *See id.* The Act's nods to the past limit the state's recovery to proceeds earmarked for past medical expenses—the only expenses that the state has ever paid. *See* 42 U.S.C. § 1396a(a)(25)(A)–(B), (H).

**2.**

Against this backdrop, the majority's semantics stretch too thin. It says that since *Ahlborn* held that the state could recover from third-party payments made for "medical care," but never used the magic words "past medical care," federal law does not clearly forbid recovery from third-party payments made for future medical care. But even if the actual letter of *Ahlborn* doesn't command preemption (though it does—more on that later), *Ahlborn*'s logic necessarily

42

compels it. *Ahlborn*'s basic premise is that the state can recover only from third-party payments made for debts that the state paid for the recipient. This generally means medical care. But it *specifically* means past medical care—the only health care items or services that the state has "furnished." *See id.* § 1396a(a)(25)(H).

And let's take a step back here. Why would the Supreme Court go through all this trouble to explain that the state can't take money marked for things that it never paid for, only to then let the state take money marked for things that it never paid for? Yet that's the rule the majority mints today. Simply because the Court never used the term "past medical care" (even though that's clearly what it meant), the majority says the state can pluck payments paid for a recipient's future medical burdens—burdens for which the state has never paid and may never pay.

That rule flouts *Ahlborn*. And despite the majority's gloss, the most logical construction is what Congress in fact did: limit the state to the part of the recovery that encompasses what the state actually "furnished"—past medical care.

### D.

In any event, this isn't an open question: *Ahlborn* held that federal law limits the state to the part of the settlement that represents payment for past medical care.

Here's why. The plaintiff's argument throughout *Ahlborn* was that the state "is limited to that portion of the settlement proceeds which fairly represents the *past medical expense* component of her recovery." *Ahlborn v. Ark. Dep't of*

43

*Human Servs.*, 280 F. Supp. 2d 881, 883 (E.D. Ark. 2003) (emphasis added); *see also Ahlborn v. Ark. Dep't of Human Servs.*, 397 F.3d 620, 622 (8th Cir. 2005) ("Ahlborn brought suit seeking a declaratory judgment, arguing that [the state] can only recover that portion of her settlement representing payment for *past medical expenses*." (emphasis added)). To move the case along, the state and the recipient stipulated that the part of the settlement representing payment for past medical care was $35,581.47. *See Ahlborn*, 547 U.S. at 274 ("To facilitate the District Court's resolution of the legal questions presented, the parties stipulated that . . . if Ahlborn's construction of federal law was correct, [the state] would be entitled to only the portion of the settlement ($35,581.47) that constituted reimbursement for *medical payments made*." (emphasis added)).[5]

The Supreme Court later held that the exceptions limit the state's recovery to the part of the settlement representing payment for medical care. *See id.* at 291–92. But in doing so, it also held that "Federal Medicaid law does not authorize [the state] to assert a lien on Ahlborn's settlement *in an amount exceeding*

---

[5] The lower court opinions also confirm that when the Supreme Court said that the parties stipulated to how much of the settlement represented "medical payments made," it was referring to the parties' agreement about how much of the settlement represented payment for past medical care. The Eighth Circuit, for instance, explained that the "parties stipulated" that $35,581.47 was "a fair representation of the [part] of the settlement constituting payment by the tortfeasor for past medical care." *Ahlborn*, 397 F.3d at 622. And the district court made clear that if the recipient there were to prevail on her claim that the state's recovery "is limited to that portion of the settlement proceeds which fairly represents the past medical expense component of her recovery," then the recipient would recover $35,581.47—the amount of the settlement that the parties agreed as representing payment for past medical care. *Ahlborn*, 280 F. Supp. 2d at 883.

44

*$35,581.47*"—the amount of the settlement representing payment for past medical care. *Id.* at 292 (emphasis added).

That decides the issue. Although the Court didn't draw out that its use of the term "medical care" meant "past medical care," that's what the plaintiff argued throughout the case, and that must be what the Court held. Otherwise, it could not have ruled that the state could take only $35,581.47—the amount of the settlement representing payment for past medical care. It wouldn't have held that the state can't assert a lien "in an amount exceeding $35,581.47"; it would have held that the state can't assert a lien "in an amount exceeding $35,581.47 [plus any amount representing payment for future medical care]."

That's not what the Court wrote. And since the Courts of Appeals are not in the business of assuming that the Supreme Court made a typo, there's only one reasonable conclusion: This query is closed. "Medical care" means "past medical care."

The majority puts up two arguments in response; neither is persuasive. It first notes the obvious—*Ahlborn* did not textually distinguish between past and future medical care. But as explained above, *Ahlborn*'s reasoning and its holding—which limited the state to only the amount that the parties stipulated as representing payment for past medical care—makes clear that *Ahlborn* was talking about past medical care, not all medical care.

45

Second, the majority tries to limit *Ahlborn* to its facts. *See* Majority Op. at 20–21. It notes that, in *Ahlborn*, the state and the recipient stipulated to how much of the settlement represented payment for past medical care. Here, in contrast, Florida did not consent to the allocation proffered by Gallardo and the tortfeasor and has not agreed to a stipulated allocation.

To start, it is unclear why this distinction makes a difference. If anything, the spotlight the majority shines on the stipulation in *Ahlborn* only proves my point: The state there agreed that about $35,000 of the settlement represented payment for past medical care. For all intents and purposes, then, the amount of the settlement allocated for past medical care equaled about $35,000. After this, the Supreme Court ruled generally that the Medicaid Act allowed the state to recover from only the part of the settlement allocated for medical care. And then the Court held specifically that the state could recover only about $35,000 of the settlement—the amount of the settlement allocated for past medical care. As I explained before, the only way the Court could have reached that result is if it concluded that the state may recover from only the amount of the settlement that represents payment for past medical care. *See supra* at 43–45.

But in any event, if the majority is claiming that *Ahlborn* doesn't apply here because Florida has not consented or stipulated to an allocation, the majority is mistaken. It cites nothing from *Ahlborn* to support such a claim. And in fact, the

46

Fourth Circuit rejected this exact argument. *See E.M.A. ex rel. Plyler v. Cansler*, 674 F.3d 290, 307 (4th Cir. 2012), *aff'd sub nom. on other grounds Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627 (2013). There the district court endorsed a "narrow interpretation of *Ahlborn*," limiting it to cases where the parties (i.e., the recipient and the state) agreed on an allocation or where there was a prior judicial determination about the correct allocation. *See id.* The Fourth Circuit reversed, rejecting this "crabbed application" of *Ahlborn*. *Id.* It noted that the Court's ruling "in no way" turned on "whether there has been a prior determination or stipulation as to the medical expenses portion of a Medicaid recipient's settlement." *Id.* Rather, "*Ahlborn* is properly understood to prohibit recovery by the state of more than the amount of settlement proceeds representing payment for medical care already received." *Id.* That rule applies no matter if Florida has stipulated to an allocation. *See id.*; *see also Giraldo v. Agency for Health Care Admin.*, 248 So. 3d 53, 56 (Fla. 2018) (holding that a plain reading of the Medicaid Act preempts Florida's practice of garnishing more than the part of a settlement representing payment for past medical care, even when Florida has not stipulated to the recipient's proffered allocation); *see id.* at 57–59 (Polston, J., concurring in part and dissenting in part) (reaching the same conclusion solely due to the Court's holding in *Ahlborn*, and concluding that *Ahlborn* applies even when Florida has not stipulated to the recipient's proffered allocation).

47

## E.

That our court breaks with most of the country today only solidifies that this question is not close.  Because though the majority claims that a lack of clarity bars conflict preemption, most other courts have had no trouble reading this supposed crystal ball.  Far and away, most courts have held that the Medicaid Act clearly preempts state law allowing state recovery from settlement proceeds paid for future medical care.  *See, e.g.*, *Plyler*, 674 F.3d at 307, 312; *McKinney ex rel. Gage v. Philadelphia Hous. Auth.*, 2010 WL 3364400, at *9 (E.D. Pa. Aug. 24, 2010); *Price v. Wolford*, 2008 WL 4722977, at *2 (W.D. Okla. Oct. 23, 2008); *Sw. Fiduciary, Inc. v. Ariz. Health Care Cost Containment Sys. Admin.*, 249 P.3d 1104, 1108–10 (Ariz. Ct. App. 2011); *In re Estate of Martin*, 574 S.W.3d 693, 696 (Ark. App. 2019), *reh'g denied* (Ark. App. Apr. 24, 2019); *Bolanos v. Superior Court*, 87 Cal. Rptr. 3d 174, 179–81 (Cal. App. 4th 2008); *Giraldo*, 248 So. 3d at 56; *Lugo ex rel. Lugo v. Beth Israel Med. Ctr.*, 819 N.Y.S.2d 892, 895–96 (N.Y. Sup. Ct. 2006); *In re E.B.*, 729 S.E.2d 270, 453 (W. Va. 2012) ("After a thorough examination of the *Ahlborn* decision and the language contained in [the West Virginia statute] . . . we find that [the statute] directly conflicts with *Ahlborn*, insofar as it permits [the state] to assert a claim to more than the portion of a recipient's settlement that represents past medical expenses."); *Latham*, 2019 UT 51, ¶ 20.  So though the majority suggests that this is a close call—and thus one

48

that inherently precludes conflict preemption—a countrywide consensus says exactly the opposite.[6]

The majority contends that, despite this federal- and state-court consensus, this "issue is hardly a settled one." Majority Op. at 17–18 n.16. It disregards most the cases I cite above, altogether ignoring the district-court and state-court cases. *Id.* Instead, it zeroes in on just the Fourth Circuit case, dismissing that court as interpreting *Ahlborn* "a little loosely." *Id.* At the gate, I'm puzzled by the ease in which the majority rejects well-reasoned opinions from federal district courts and state appellate courts—three of which come from state supreme courts. But at any rate, the majority is wrong to dismiss the Fourth Circuit case. *Plyler*'s interpretation of *Ahlborn* was unequivocal: "[F]ederal Medicaid law limits a state's recovery to settlement proceeds that are shown to be *properly allocable to past medical expenses*." 674 F.3d at 312 (emphasis added). Although that holding wasn't the only issue in the case, it was essential to the Fourth Circuit's analysis (and ultimate rejection) of the district court's interpretation of the Medicaid Act.

---

[6] A fleeting few have accepted the majority's view. *See I.P. ex rel. Cardenas v. Henneberry*, 795 F. Supp. 2d 1189, 1197 (D. Colo. 2011); *Special Needs Tr. for K.C.S. v. Folkemer*, 2011 WL 1231319, at *1 (D. Md. Mar. 28, 2011); *In re Matey*, 147 Idaho 604, 608 (2009). Yet their analysis is sparse, and they ignore the points made above. In fact, one court seemed to hold that a recipient's likelihood of staying on Medicaid somehow influences the construction of the Medicaid Act—a plainly incorrect view. *See Henneberry*, 795 F. Supp. 2d at 1197 ("Because Plaintiff intends on staying on Medicaid, any funds allocated for future medical expenses should rightfully be exposed to the state's lien so that the state can be reimbursed for its past medical payments."). At any rate, these cases are in the minority and pale against the majority trend.

*See id.* at 307.  So we cannot dismiss the Fourth Circuit's interpretation of *Ahlborn* as mere dicta.  *See United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (per curiam) (explaining that dicta is "a statement that neither constitutes the holding of a case, nor arises from a part of the opinion that is necessary to the holding of the case").  It is persuasive authority from a sister circuit—apparently the only other circuit to have addressed this issue.

The majority also forgets to add an important piece of persuasive authority to the mix: the Supreme Court's recent denial of certiorari in *Office of Recovery Services v. Latham*, 140 S. Ct. 852 (2020).  In *Latham*, the Supreme Court of Utah issued a detailed opinion that unanimously rejected the majority's minority-trend interpretation of the Medicaid Act, adopting instead the majority-trend position that I have taken here.  *See* 2019 UT 51.  The Court's denial of certiorari there is by no means a binding holding.  But given the widespread consensus described above, one would think that the Court would have tackled this issue had it thought that most courts were wrong and that, instead, the minority view was right.  The Court's pass on the issue thus suggests that the majority view, not the majority's view, is the right one.

Finally, you may have noticed near the end of the string cite above that even Florida has rejected the majority's application of the Medicaid Act to Florida law.  *See Giraldo*, 248 So. 3d at 56.  In short order, all seven of Florida's Supreme Court

50

Justices held that the Medicaid Act trumps Florida's recovery plan; six because the text clearly preempts, one because *Ahlborn* expressly decided this issue. *Id.* at 56–59. Although Florida's take on federal law doesn't bind us, its invalidation of its own law should give us pause. Indeed, for an opinion that claims to rest on respect for Florida's rights, overruling a unanimous panel of Florida's Supreme Court seems inconsistent.

## F.

To close, I'll note that the majority's ruling has laid the foundation for federal-state forum shopping. Florida Medicaid recipients will now head to state administrative court to benefit from the Florida Supreme Court's holding in *Giraldo* (in fact, Florida law compels recipients to challenge the state's lien in state administrative court, *see* Fla. Stat. § 409.910(17)(b)). Meanwhile, Florida may seek declaratory relief in federal court to bypass *Giraldo* and benefit from our holding in *Gallardo*. That holding will bind our district courts to declare that the Medicaid Act does not preempt Florida's attempt to recover from the part of the recipient's recovery that represents payment for future medical care. And then Florida will take the federal-court judgment to state court and argue that it has a preclusive effect on the recipient.

This situation is far from hypothetical—it's exactly what's happening here. The parties agree that the reason *Giraldo* has not mooted this case is that Florida

51

intends to use the preclusive effect of our judgment in state administrative court. Although the administrative court will decide in the first instance whether preclusion applies, it will apply federal preclusion law. *See Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc.*, 227 So. 3d 612, 616 (Fla. 4th DCA 2017). And under federal law, it seems likely that res judicata will apply. *See In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001) (noting that res judicata generally bars relitigation when (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases). So, perversely, the state administrative court will likely apply the Eleventh Circuit's decision in *Gallardo*, rather than the Florida Supreme Court's decision in *Giraldo*.

I see nothing to stop Florida from taking this tact again. And thus the majority, by cutting a chasm between federal and Florida law, has sown the seeds for forum shopping. Recipients will rush to state court. Florida will rush to federal court. And whoever gets the ruling first will win. That is a stereotypical forum-shopping scenario. And it is an arbitrary outcome that warrants either en banc or Supreme Court review.

* * *

52

In the end, the majority says that it can't make heads or tails of the Medicaid Act, so the tie goes to Florida. That is wrong. Conflict preemption must be clear, no doubt, but Congress doesn't need to etch its intent in statutory stone. Said differently, you don't need a weatherman to know which way the wind blows. Given the text's plain preference for the past, the logic and letter of *Ahlborn*, and the sound reasoning of most courts across the country (including Florida's Supreme Court), it's clear that federal law preempts Florida's practice of garnishing the part of a recipient's recovery paid for future medical care. And so I dissent.

## II.

That all said, I agree with the majority that Florida's allocation scheme (i.e., the way that it decides how much of the settlement represents payment for past medical care) complies with federal law. Still, Florida's plan is not perfect. On this record, federal law would preempt Florida's allocation formula if it stood alone. But because Florida allows the recipient to rebut the presumptive allocation in an administrative proceeding, and because Gallardo has not shown that the presumptive allocation is in fact irrebuttable, Florida's process complies with the Medicaid Act.

## A.

In *Wos*, the Supreme Court reaffirmed that the Medicaid Act preempts state laws that allow the state to claim part of a recipient's tort recovery not designated as payments for past medical care. *See* 568 U.S. at 636. But the Court recognized a problem: It's not always clear what part of a tort recovery represents payment for past medical care. *See id.* at 640. So how does the state divvy up an ambiguous recovery in a way that complies with the Act? Although the Court did not provide a surefire path around preemption, it hinted at two ways through which the state might winnow out past medical costs: an easy way and a hard way. *See id.* at 636–43.[7]

The easy way to avoid preemption is for the state to have a proceeding to decide the correct allocation. *See id.* at 638–39 (expressing repeatedly the Court's preference for individual adjudication over a one-size-fits-all formula). The tribunal there can decide the right way to divide the tort recovery, with an eye toward how much the recipient might have received for past medical care had the case gone to trial. *See id.* at 640 (stating that although a "fair allocation" of an ambiguous recovery "may be difficult to determine," trial judges and lawyers "can

---

[7] Of course, *Wos* did not limit the ways that a state might comply with the Medicaid Act. To the contrary, the Court left open the possibility that other administrative methods could comply with federal law, so long as those methods do not let the state claim any part of a recipient's recovery allocated for anything besides past medical care and do not violate other Medicaid objectives. *See Wos*, 568 U.S. at 636.

54

find objective benchmarks to make projections of the damages the plaintiff likely could have proved had the case gone to trial").

To simplify this process, the state can also establish a presumptive allocation for how much of the recovery represents past medical costs, so long as the challenger can rebut that presumption in a proceeding. *See id.* at 641–42 (describing several state presumption-based allocation methods as "more accurate" than North Carolina's law and noting that North Carolina "might also consider a different [allocation method] along the lines of what other [s]tates have done in Medicaid reimbursement cases"). But this is key: If the state uses a presumptive allocation, the presumption must in fact be rebuttable. *See id.* at 639. "An irrebuttable, one-size-fits-all statutory presumption" violates the Medicaid Act. *See id.*

Now, the hard way. Should the state decide that "case-by-case judicial allocations will prove unwieldy," the state can "adopt *ex ante* administrative criteria for allocating medical and nonmedical expenses, provided that these criteria are backed by evidence suggesting that they are likely to yield reasonable results in the mine run of cases." *See id.* at 643. If the state does so, it need not hold an allocation proceeding; the evidence-backed allocation method decides what part of the settlement represents payment for past medical care. *See id.*

55

(distinguishing state recovery through *ex ante* criteria from state recovery through "case-by-case judicial allocations").

The reason this is the hard way is that the state, if it wants to rely solely on an *ex ante* allocation method, must provide evidence that the method will reach a fair allocation "in the mine run of cases." *See id.* In other words, the state bears the burden of showing that its method usually works. *See id.* at 655–56 (Roberts, C.J., dissenting) (pointing out that *Wos* requires that the state provide "some sort of study substantiating the idea that [the *ex ante* allocation method works] in most cases," which is "quite odd" given that the Supreme Court has "never before, in a preemption case, put the burden on the [s]tate to compile an evidentiary record supporting its legislative determination").

Though this is a unique standard, it makes sense. Even a skim through *Wos* reveals that the Court favors individualized determinations over broad-brush algorithms. *See id.* at 638–43 (making repeated reference to individual adjudications, but spending just two sentences on *ex ante* procedures). And for good reason: Without a proceeding to check its work, a formulaic allocation may let the state reach parts of a recipient's tort recovery not marked for past medical costs. *See id.* at 636. The Court thus held that if a state wants to rely on an *ex ante* allocation method alone (like an allocation formula), it needs to prove that the

56

method typically leads to a reasonable allocation for past medical costs.  *See id.* at 643.

## B.

Given these rules, Florida's formula—standing alone as an *ex ante* allocation method—does not comply with *Wos*.  This is because the state has not shown that its formula works "in the mine run of cases."  *See id.* at 643.  Nowhere in the record does Florida put forth studies, expert analysis, or even anecdotal evidence to prove that its formula typically reaches a fair result.  In fact, Florida conceded in response to a public-records request that it has "no responsive documents" containing any "analysis" on whether the formula-based allocation "is a reasonable approximation of the amount recovered for past medical expenses."  As North Carolina did in *Wos*, Florida has adopted a "one-size-fits-all allocation for all cases," with no proof that the formula usually works.  *See id.* at 643.  This process, on its own, does not comply with federal law.  And if that were the end of it, federal law would preempt Florida's allocation scheme.

## C.

Fortunately for Florida, that's not the end of it, because Florida's allocation scheme does not hinge solely on the formula.  Instead, Florida takes the easy route: It allows the recipient to challenge the formula's presumptive allocation in an administrative proceeding.  *See* Fla. Stat. § 409.910(17)(b).  This

presumption-based process balances the state's interest in recouping Medicaid payments—and the administrative realities of doing so—with the recipient's property interest in tort recovery. *See Wos*, 568 U.S. at 641 (noting that states have "considerable latitude to design administrative and judicial procedures to ensure a prompt and fair allocation of damages"). And since a recipient can challenge the presumption in an administrative proceeding, the process follows *Wos*'s strong preference for individual review. *See id.* at 638–43.

The recipient calls this process bunk because it requires that the recipient prove that the presumptive allocation is wrong by clear and convincing evidence. But the Court has suggested—almost a wink and a nudge—that federal law does not forbid this level of burden-shifting. *See id.* at 641 (describing several burden-shifting schemes as "more accurate" than North Carolina's process, including one in which the recipient must rebut the presumption by clear and convincing evidence). And Gallardo has not proven that the clear and convincing evidence standard makes the presumption effectively irrebuttable. To the contrary, Florida has shown that recipients can and often do rebut the presumption by clear and convincing evidence. *See, e.g.*, *Herrera v. Agency for Health Care Admin.*, No. 16-1270, 2016 WL 6068013 (Fla. DOAH Oct. 11, 2016); *Cardenas v. Agency for Health Care Admin.*, No. 15-6594, 2016 WL 5784135 (Fla. DOAH Sept. 29, 2016); *Weedo v. Agency for Health Care Admin.*, No. 16-1932, 2016 WL 5643668

58

(Fla. DOAH Sept. 27, 2016).  The procedure thus complies with the level of burden-shifting considered in *Wos*.  *See* 568 U.S. at 641.[8]

Gallardo also claims that Florida's presumptive-allocation formula poisons its allocation process because the formula might spit out the wrong number to start.  But that is inherently true of all presumptive allocations: They don't always get the correct allocation right off the bat.  That is why the Supreme Court held that the state must have a way to ensure that the presumptive allocation is reasonable in each particular case—a feat that the state can accomplish through a proceeding in which the recipient can rebut the presumptive amount.  *See id.* at 639–40.  On top of this, the Supreme Court seems open to rebuttable presumptions, some even more onerous than Florida's.  *See id.* at 641 (describing several rebuttable presumptions as "more accurate" than North Carolina's process, including one in which the state presumes that the *entire tort recovery* represents past medical costs and requires that the recipient rebut the presumption by clear and convincing evidence).  So the presumption can be off at the start, as long as the recipient can meaningfully rebut that result in the end.

---

[8] It is not lost on me that by showing that challengers often rebut the presumption, the state proves that the formula often gets it wrong.  But again, Florida's formula isn't the end—it's the beginning.  For administrative convenience, Florida sets a presumptive number using a standard formula and then allows the challenger to rebut that number.  Since the presumptive number is in fact rebuttable, the procedure properly balances the state's interest in administrative feasibility with the individual's right to tort recovery.  *See Wos*, 568 U.S. at 639.

Gallardo also levies another attack on Florida's presumptive allocation. She seems to say that the state, if it wants to use a presumption, must first prove that its presumptive allocation is reasonable "in the mine run of cases." In other words, Gallardo slaps onto the presumptive-allocation method the same burden that *Wos* attached to the *ex-ante*-criteria method.

This argument misses the mark for a few reasons. For one, *Wos* discusses presumptive allocations and *ex ante* criteria at different parts of the opinion, and there is no indication that it meant to tie them together. *Compare id.* (discussing presumptive allocations), *with id.* at 643 (discussing *ex ante* criteria). In fact, the Court said that presumptive allocations are simply proceeding modifications—they ensure that individual proceedings do not become too burdensome in the aggregate. *See id.* at 641. Because they are part and parcel of individual proceedings, these presumptions seem to receive the same deference that the Court gives to individual review, not the heightened standard that the Court applies to *ex ante* formulas not backed by individual review. *See id.* at 641. And again, *Wos* considered presumptive allocations just as arbitrary as (and far more onerous than) Florida's presumption, and it did so without suggesting that those states would need to prove that their presumptions are correct in the mine run of cases. *See id.*

Above all, the reasons for imposing a heightened standard to stand-alone formulas do not apply to rebuttable presumptions. When a state relies solely on an

60

*ex ante* formula without proof that the formula works in the "mine run of cases," the state provides no assurance that the allocation will be fair for each particular case. *See id.* at 637. But when the state uses a rebuttable presumption, there remains a way to ensure that the allocation is reasonable in each case: an individual proceeding in which the recipient can rebut the presumptive amount. *See id.* at 641. So when a state uses an administrative proceeding as a failsafe for its presumptive allocation, it need not bear the heavy burden of proving that its presumptive allocation is reasonable in the mine run of cases. *See id.*

\*       \*       \*

If Florida relied on only its formula to administer its allocation scheme, Gallardo would be right that the scheme conflicts with *Wos*. But because Florida uses its formula to create a presumptive allocation, and because Gallardo has not shown that the presumptive allocation is in fact irrebuttable, Florida's process complies with federal law. For these reasons, I concur with the majority.

61